No. 88-337

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

SIDNEY E. WARD,

                Plaintiff and Respondent,

    -vs-

VIBRASONIC LABORATORIES, INC.,
a corporation,

                Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Fifth Judicial District,
               In and for the County of Jefferson,
               The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Roger Tippy, Helena, Montana

    For Respondent:

        Jardine & Grauman; John J. Jardine, Whitehall,
        Montana

_____

Submitted on Briefs:  Dec. 9, 1988

      Decided:  February 28, 1989

Filed:

'89 FEB 28 AM 10 52
ED SMITH, CLERK
MONTANA SUPREME COURT
FILED

                      Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Vibrasonic Labs. Inc., appeals from a judgment of the District Court for the Fifth Judicial District, Jefferson County. Trial was held April 6, 1988, without a jury. The District Court entered judgment for the plaintiff, Ward and awarded $2,500.00 punitive damages. This Court affirms the judgment of the District Court but remands the cause for specific findings with regard to punitive damages pursuant to § 27-1-221, MCA.

There are three issues for review:

1) whether the District Court erred by allowing the plaintiff to amend his complaint to conform to the evidence presented at trial;

2) whether the District Court erred by denying defendant's motion to vacate the trial setting; and,

3) whether the District Court erred by not presenting findings pursuant to § 27-1-221, MCA, regarding punitive damages.

The plaintiff, Sidney E. Ward, entered into an purchase/lease agreement with Vibrasonic Laboratories, Inc. for the purchase of a hearing aid on July 31, 1986. The cost of the hearing aid was $499.00 plus $100.00 fitting fee for a total of $599.00. Ward made a downpayment of $180.00 leaving a balance of $419.00 to be paid in monthly installments of $20 over 36 months. As the District Court noted in its findings of fact, the agreement failed to comply with several provisions of the Montana Retail Installment Act. The agreement fails to give notice of the buyer's right to payoff in advance the full amount and obtain a partial refund of the finance charge as required by § 31-1-231(2), MCA. The

2

agreement is required to state, if a separate amount for insurance is paid, the specific types of coverage and benefits, § 31-1-231(5)(d), MCA. It fails to state the amount of the finance charge as required by § 31-1-231(5)(g); and it fails to state the total amount of the time balance required by § 31-1-231(5)(h), MCA. Finally, Vibrasonic itself violated § 31-1-233, MCA, by writing an insurance policy which it was not authorized to do by the state of Montana.

Ward purchased this insurance from Vibrasonic's agent. Vibrasonic called the insurance a "the Ultimate Hearing Aid Protection Plan." The plan provided for loss against physical damage to the hearing aid caused by "external sources such as theft, fire, accidental breakage, water, auto accident," plus loss by mysterious disappearance. This plan specifically states it is "separate and distinct from the factory warranty and does not cover repair service normally covered by the factory warranty."

The District Court found that "the Ultimate Hearing Aid Protection Plan" to be "insurance" within the meaning of the insurance code of the state of Montana because of terms used in the plan such as "insured's name, policies, coverage, and premiums." The District Court found that this was an attempt to write an insurance policy by an unlicensed insurer; that a premium of $20 was collected and constituted a fraudulent, deceptive and illegal act on the part of Vibrasonic.

Ward became dissatisfied with the hearing aid despite attempts by Vibrasonic to make adjustments. Ward tried to rescind the contract but Vibrasonic would not return payments already made under the contract. Nonetheless, Ward returned the hearing aid in the summer of 1987 and stopped making payments. During this time, Ward was diagnosed as having terminal cancer in the facial area and brain. Ward's

3

physician, Dr. Sacry, wrote a letter pursuant to paragraph three of the agreement between Vibrasonic and Ward which should have allowed Ward to rescind the contract. Paragraph three reads as follows:

> You may cancel this agreement if in one year after the delivery date you consult a licensed physician, or a non-competitive certified audiologist, that has no connections with a hearing aid dispenser, and such person advises you against the purchase or use of a hearing aid and specifies in writing the medical or audiological reasons for such advice.

Vibrasonic denied Ward's right to rescind under this clause of the contract. It was upon this basis that the District Court found that Vibrasonic breached the contract and ordered that Ward be refunded $440.00, the amount which he had paid.

Ward filed a complaint on October 6, 1987. The complaint contained four counts upon which Ward based his claims for relief. Count I alleged the basis for recission; Count II was an alternative to Count I; Count III alleged usurious interest rates on the contract, this Count was later dropped; and Count IV alleged fraudulent misrepresentation in the sale of the insurance policy covering the hearing aid. Count IV reads as follows:

> That plaintiff was required to purchase "insurance" as set forth in said agreement, but plaintiff is unaware of the nature or extent of any such insurance coverage, nor was he ever furnished with a policy or other memorandum of insurance, nor was plaintiff advised that he may either accept or decline said insurance, and that the additional charge of $20.00 for "insurance" is unwarranted and unlawful and was obtained by false and fraudulent misrepresentations by defendants, and should be returned to plaintiff.
>
> That the actions of the defendants in requiring said "insurance" or in charging the plaintiff for the same, were false and fraudulent and oppressive and defendants should be assessed punitive damages in the amount of $10,000.00, or such amount as may

4

be determined upon trial of this cause, by reason of said actions.

Trial was set on February 17, 1988, for April 6, 1988, giving Vibrasonic seven week's notice to prepare for trial. On March 23, 1988, two weeks before trial, Vibrasonic moved for a continuance and asked to present argument on its motion for summary judgment on the trial date rather than try the case.

On April 6, 1988 the plaintiff and his counsel appeared and were ready for trial; the defendant appeared only through counsel. Vibrasonic's motions for continuance and summary judgment were denied and the trial was held. The plaintiff presented the testimony of Ward. The defendant did not put on a case-in-chief.

The District Court entered its findings on April 18, 1988 and judgment was entered April 27, 1988 in favor of Ward. Vibrasonic moved for a new trial on the grounds of irregularities in the proceedings of the District Court and surprise. This motion was denied and the defendant, Vibrasonic, appeals to this Court.

I

Did the District Court err by allowing the plaintiff to amend his complaint to conform to the evidence presented at trial?

First, the appellate procedural doctrine that matters not raised at trial will not be considered on appeal applies here.

> It has long been the rule of this Court that on appeal we will not put a District Court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which appellant made no objection.

Green v. Green (1978), 176 Mont. 532, 536, 579 P.2d 1235, 1237. When plaintiff's counsel made the motion to amend, defendant's counsel made no objection.

Second, the rule with regard to amendments to the pleadings is well-settled. As early as 1905, the position of this Court has been:

> . . . the court has discretionary power to permit the amendment under such terms as it deemed just and proper. This it did.

Dorais v. Doll (1905), 33 Mont. 314, 316-17, 83 P. 884, 885.

> The policy of the law is to permit amendments to the pleadings in order that litigants may have their causes submitted upon every meritorious consideration that may be open to them; therefore _it is the rule to allow amendments and the exception to deny them._ (Emphasis added.)

Union Interchange, Inc. v. Parker (1960), 138 Mont. 348, 353-54, 357 P.2d 339, 342.

In addition to settled case law, Rule 15(b), M.R.Civ.P. provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.. . . the court may allow the pleadings to be amended and _shall_ do so freely when the presentation of the merits of the action will be subserved thereby . . . (Emphasis added.)

The purpose of Rule 15(b) allowing amendment of a complaint to conform to the evidence presented is to "put an end to wasteful and needless litigation and have trial on the merits of the case." Reilly v. Maw (1965), 146 Mont. 145, 156, 405 P.2d 440, 447.

Vibrasonic contends that to allow the amendment of the complaint on the insurance issue raises a new theory of recovery. This Court disagrees. Count IV of the complaint clearly contemplates the claim of tortious misrepresentation by Vibrasonic to Ward by requiring insurance on the hearing aid. The policy purchased by Ward was an insurance policy as

6

defined by Montana law and not a guaranty or warranty as purported by Vibrasonic. The Montana Insurance Code, § 33-1-210, MCA, defines property insurance as:

> Property insurance is insurance on real or personal property of _every_ kind and _every_ interest therein, whether on land, water, or in the air, against loss or damage from any and all hazard or cause, and against loss consequential upon such loss or damage, other than noncontractual legal liability for any such loss or damage. (Emphasis added.)

The contract presented to Ward was indeed insurance under this definition. Vibrasonic claims this policy was simply a warranty. We disagree:

> A warranty promises indemnity against defects in an article sold, while insurance indemnifies against loss or damage resulting from perils outside of and unrelated to defects in the article itself.

State ex rel. Duffy v. Western Auto Supply Co. (Ohio 1938), 16 N.E.2d 256, 259.

The contract refers to a standard factory warranty which lasts for one year. The insurance was sold separately by the Vibrasonic agent approximately three weeks after the contract was signed, and as set out above, protected against loss or damage, not defects in the hearing aid itself.

This Court concludes that the District Court did not err by allowing the plaintiff to amend his complaint to conform to the evidence presented.

## II

Did the District Court err by denying defendant's motion to vacate the trial setting?

The thrust of Vibrasonic's argument with regard to this issue is that it was prejudiced and surprised because of the amendment to the plaintiff's complaint and because no continuance was granted to allow the defendant to prepare a defense.

7

Count IV of the complaint, as set out above, contains many references to insurance. It expressly refers to the issuance of insurance, the <u>unlawful</u> collection of a premium, that it was obtained by false and fraudulent misrepresentations by Vibrasonic, and that punitive damages should be assessed. This pleading standing alone is enough to cover the unlawful activities of Vibrasonic in the insurance business. There was no surprise, there was no change in theory, there was no prejudice to Vibrasonic. Vibrasonic employees or agents did not appear at trial, after seven weeks notice of a trial date and over a year's notice of Count IV. It appears such motions were filed simply for delay. Ward died soon after trial and a continuance at the time would have been fatal to Ward's case.

This Court concludes that the District Court did not err by denying Vibrasonic's motion to continue.

### III

Did the District Court err by not presenting findings pursuant to § 27-1-221, MCA, regarding punitive damages?

This Court agrees with both the plaintiff and defendant on the point that punitive damages were awarded without making all the required findings pursuant to § 27-1-221(7)(b)(i-ix), MCA:

> When an award of punitive damages is made by the judge, he shall clearly state his reasons for making the award in findings of fact and conclusions of law, demonstrating consideration of each of the following matters:
>
> (i) the nature and reprehensibility of the defendant's wrongdoing;
>
> (ii) the extent of the defendant's wrongdoing;
>
> (iii) the intent of the defendant in committing the wrong;

8

(iv) the profitability of the defendant's wrongdoing, if applicable;

(v) the amount of actual damages awarded by the jury;

(vi) the defendant's net worth;

(vii) previous awards of punitive or exemplary damages against the defendant based upon the same wrongful act;

(viii) potential or prior criminal sanctions against the defendant based upon the same wrongful act; and

(ix) any other circumstances which may operate to increase or reduce, without wholly defeating, punitive damages.

Although the District Court did not specifically state in its findings with regard to punitive damages that the findings were being made pursuant to the above statute, the court did make partial findings in accordance with the statute. Findings of fact no. 9 and no. 10 state the District Court's findings as related to Count IV and the sale of insurance by Vibrasonic. The findings are set out as follows:

9. That at the time of delivery of said hearing aid, the agent, Richards, sold Plaintiff an insurance policy thereon (which was provided for by written addition in the agreement) being called "The Ultimate Hearing Aid Protection Plan" (Plaintiff's Exhibit 3). The policy provided for loss against physical damage to the aid caused by ". . . external sources such as theft, fire, accidental breakage, water, auto accident, plus many others." It also covers loss by mysterious disappearance. The "policy" also provides for a $75 deductible for the replacement of the hearing aid "in case of loss." The Court finds that "The Ultimate Hearing Aid Protection Plan" is "insurance" within the meaning of the insurance code of the state of Montana, there being many

9

terms used that are indicative of insurance policies such as the application containing the "Insured's Name," the terms "policies, coverage, premiums, uninsured shipping, protection," among others, all of which clearly spell out an attempt to write an insurance policy in the state of Montana by an unlicensed insurer; that a premium of $20 was collected and constituted an illegal act on the part of Defendant, and which was fraudulent and deceptive.

10. That Richards, acting on behalf of the Defendant VIBRASONICS, falsely and fraudulently sold insurance to the Plaintiff and collected a premium therefor. This act was done with the knowledge that neither he nor Defendant were authorized to sell insurance in the state of Montana. This was a wrongful, tortious act, which justifies the imposition of punitive damages by way of example in an amount hereinafter fixed.

These findings address (i) through (iv) of the statutory requirements. Section (v) relates to amount of actual damages awarded by the jury; although this was not a jury trial; actual damages in the amount of $440 were awarded by the judge. It was subdivisions (vi) through (ix) that were not addressed. In order to consider these statutory requirements, evidence must be presented for the court to consider. This Court remands on this issue so that evidence may be presented to the District Court for consideration and so that findings and conclusions may be made in accordance with § 27-1-221(7)(b)(i-ix), MCA.

With respect to subdivision (vi), as to the defendant's net worth, either party may present such evidence at trial. The plaintiff may want to introduce evidence of this kind in an effort to obtain a greater damage award and the defendant may want to present evidence of its wealth in an effort to mitigate the damage award. The purpose of punitive damages is to punish and deter the party found liable, but not to hit so hard as to bring about financial ruin. In the usual case

10

"a defendant which presents no evidence of financial worth cannot complain that the jury did not have such evidence." Hicks v. Lilly Enterprises (Or.App. 1980), 608 P.2d 186, 189.

Finally, the defendant argues that if indeed the sale of the insurance is a violation of the Montana Insurance Code, the State Auditor's office is the agency which should proceed against the defendant, not the plaintiff. This Court disagrees. The plaintiff has a common-law tort action against the defendant for fraud and misrepresentation. The State Auditor's office may also proceed against the defendant under its penalty provisions for violation of the insurance code.

The award of compensatory damages is affirmed and the punitive damages judgment is reversed and remanded for proceedings in accordance with this Opinion. Costs of appeal to plaintiff.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

11

Mr. Justice John C. Sheehy, in special concurrence:

This case demonstrates how silly the results can be when the legislature, in the guise of "tort reform" interjects itself in matters that are properly in the province of the courts. In my opinion, the District Court was measurably conservative in assessing punitive damages against a company that took advantage of the ill and the elderly, and violated our state's insurance laws. It is safe to predict that punitive damages awards will be larger in the future because of the rites of passage now required by the legislature to be followed. The notion that torts can be handled in the legislative halls instead of in courts at law is prevalent now, and unfortunately it will keep muddying the legal waters.

_John C. Sheehy_
Justice