No. 81-544

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

LAURENCE G. CHRISTIE, et al.,

Plaintiffs and Respondents,

-vs-

CHARLES A. PAPKE, et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellants:

Bolinger and Higgins, Bozeman, Montana

For Respondents:

Nash and Nash, Bozeman, Montana

---

Submitted on Briefs:  May 20, 1982

Decided:  November 9, 1982

Filed: NOV 9 1982

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants, Charles A. Papke, et al, appeal from a judgment of the Gallatin County District Court quieting title to certain lands in favor of the plaintiffs, Laurence G. Christie and his wife.

This case involves a boundary dispute between adjacent landowners. Plaintiff, Laurence G. Christie (Christie) brought this quiet title action to determine ownership of a triangular strip of land lying along the boundary between the parties' lands. The trial court, sitting without a jury, held for Christie and ordered that Christie's title to the disputed strip be quieted. The trial court also ordered the defendants (Papke) to rebuild a fence which he had torn down or to pay for the reconstruction.

Papke contends that the trial court erred in not finding that an implied agreed boundary was established by a fence built in 1920, and that the trial court should also have found that Papke could recover money he spent to replace the 1920 fence which Christie had destroyed. We affirm.

Both parties' predecessors in interest received title to their property by patent from the United States government. The boundary between the properties is described in both deeds as the quarter section line. In 1920, a tenant of Christie's predecessor in interest built a fence which served as a boundary between the properties until 1976.

In 1976, Christie hired a licensed surveyor. The survey results indicated that the actual quarter section line was located somewhat south of the 1920 fence line. Papke's land lies directly south of Christie's. This meant that the 1920 fence deprived Christie of the full use of the land described in his deed.

In 1978, Christie destroyed the 1920 fence and built a fence along the boundary indicated in the 1976 survey. In 1980, Papke destroyed the new fence and reestablished the 1920 fence. This suit followed.

Papke argues that because the 1920 fence served as a boundary for approximately 58 years and because Christie helped to maintain the fence; that at some point the fence became the actual boundary by implied agreement.

Although we have recognized the right of adjoining property owners to establish an agreed boundary line (Myrick v. Peet (1919), 56 Mont. 13, 180 P. 574), under Townsend v. Kuokol the parties are required to prove by clear and convincing evidence all elements of an implied agreed boundary. In Townsend, 148 Mont. 1, at 6, 416 P.2d 532, at 535, we stated:

> "[i]n order to establish an agreed boundary line, the evidence must show more than mere acquiescence and occupancy for the time prescribed by the statute of limitations; it must go further and show that there was uncertainty in the location of the line, that there was an agreement among the coterminus owners, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith."

In a memorandum accompanying the findings and conclusions (a most helpful device to an appellate court), the trial court applied Townsend, and stated that "[i]n this case the evidence was not clear and convincing that the parties or predecessors in interest had agreed that the fence line would be the dividing line."

Although Christie helped to maintain the 1920 fence, his long acquiescence in the existence of the 1920 fence did not create an implied agreement establishing a boundary. Papke cites authority from other jurisdictions holding that

long acquiescence is enough. However, our law is to the contrary, and we choose to follow it. (Townsend v. Kuokol, supra.)

The rule is that "where . . . two adjoining proprietors are divided by a fence which they suppose to be the true line, they are not bound by the supposed line, but must conform to the true line when it is ascertained." Myrick v. Peet, supra; reaffirmed in Schmuck v. Beck (1925), 72 Mont. 606, 234 P. 477; and Reel v. Walter (1957), 131 Mont. 382, 309 P.2d 1027. The trial court found the most credible evidence of the true boundary to be the 1976 survey. The trial court had before it the testimony of the surveyor and the plat prepared by him. The evidence supports the finding that the survey had been properly made and the line properly located.

Our holding on the implied boundary issue means that Papke would have no right to recover on his counterclaim asking for fence construction expenses incurred when he rebuilt the 1920 fence which Christie had torn down in 1978.

In ruling for plaintiff Christie, the trial court ordered that Papke, in lieu of damages, must reestablish the fence along the true boundary line surveyed by Ronald L. Burgess in 1976. The trial court gave Papke 1 1/2 months after judgment to comply with its order to reconstruct the fence. That judgment was stayed pending this appeal. In affirming we remand to the trial court to determine a proper time for Papke to build the fence or to pay damages in lieu of construction.

Affirmed and remanded.

_Daniel J. Shea_
Justice

-4-

We Concur:

_Gene B. Daly_

_[signature]_

_Frank B. Morrison Jr._

_John C. Sheehy_
Justices