No. 83-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

BRUCE E. FUNK, as the Personal
Representative of the Estates
of Kenneth E. Funk and Alice
M. Funk, Deceased,

Plaintiff and Appellant,

-vs-

RANDOLPH K. ROBBIN,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Warden, Christiansen, Johnson & Berg, Kalispell,
Montana

For Respondent:

Murray, Kaufman, Vidal & Gordon, Kalispell, Montana

---

Submitted on Briefs: May 3, 1984

Decided: October 9, 1984

Filed: UCT 1984

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Kenneth E. Funk and Alice M. Funk brought a quiet title action against Randolph K. Robbin in the District Court of Flathead County, asking to quiet title according to a Certificate of Survey. Defendant Robbin counterclaimed. Kenneth Funk died during the pendency of the action and Alice Funk died following the trial of the case to a 6-person jury. Bruce Funk, personal representative of his parents' estates, appeals from the judgment in favor of defendant and from the denial of his motion for a judgment N.O.V. or a new trial. We affirm.

The issues are:

1. Was there substantial evidence to support the verdict against the plaintiff on his complaint to quiet title in accordance with Certificate of Survey No. 6056?

2. Does substantial evidence support the verdict quieting title in favor of defendant on his counterclaim?

3. Did the trial court commit reversible error in making certain evidentiary rulings?

4. Did the trial court err in giving and refusing certain jury instructions?

5. Did the trial court err in denying the plaintiff's motion to quash defendant's costs?

The basic question is the location of the boundary lines between the plaintiff's and defendant's real property in Section 3, Township 27 North, Range 20 West, M.P.M. The plaintiff owns the SE¼ and the E½SW¼, while defendant owns the NW¼SW¼, the S½N½ and the NE¼NE¼. The parties purchased the property in 1963 or earlier.

The fences which run along the north/south and east/west boundaries between the plaintiff's and defendant's property have been in the same locations for more than 39 years. In

2

1958 defendant cleared the timber from 20 acres in the disputed area immediately west of the fence. After preparing the ground for several years, defendant has continuously cropped the land since that time. In addition, a member of the defendant's family carved images in the rock face on a ledge of rock located in the disputed area.

In 1980 plaintiff decided to sell a portion of his property located in Section 3. Plaintiff hired a Registered Land Surveyor, who prepared Certificate of Survey No. 6056, which was filed in Flathead County. Survey 6056 showed that the fences between the plaintiff's and defendant's real property were not located on the 1/16th section line on the west side, or the 1/4 line on the north side. The area in dispute is west of the north/south fence running from a rock formation in a northerly direction in the NE¼SW¼ in Section 3.

Mr. Hersman, the Registered Land Surveyor who prepared Survey 6056, testified in behalf of the plaintiff. Surveyors Smith and Lautern testified in behalf of the defendant. Many documents were admitted into evidence. There was extensive testimony with regard to the accuracy of Survey 6056. The plaintiff contended that the survey was accurate and that title to the disputed property described in Survey 6056 should be quieted in the plaintiff. The surveyors testifying for the defendant testified that Survey 6056 was not accurate and that there were lost corners, which made it impossible to survey exactly where the 1/4 line and 1/16th line were located in Section 3. The defendant submitted testimony and evidence to substantiate its theory that the fence lines constitute the agreed boundaries whether or not located on the 1/16th and 1/4 line of Section 3. The evidence was sharply contradictory.

In its verdict, the jury held against plaintiff on its complaint to quiet title and for the defendant on his counterclaim of title. The District Court entered judgment that plaintiff was not entitled to have title quieted against the defendant and in accordance with Certificate of Survey 6056. Judgment was entered holding that the fences constituted the boundary line between the parties' property and that the title to the disputed area was quieted in defendant. In addition, the District Court determined costs and disbursements in the sum of $5,618.65. The plaintiff appeals.

I

Was there substantial evidence to support the verdict against the plaintiff on his complaint to quiet title in accordance with Survey 6056?

In substance the plaintiff contends there was no evidence that Survey 6056 was not properly and accurately made, and that no other survey was produced to prove the boundaries were anywhere other than shown in that survey. Defendant contends that the evidence is not sufficient to meet plaintiff's burden of proof.

In reviewing the sufficiency of the evidence in a jury case, we apply the standards set forth in Gunnels v. Hoyt (Mont. 1981), 633 P.2d 1187, 1191, 38 St.Rep. 1492, 1495:

> "Plaintiff's first issue disputes the sufficiency of the evidence to support the verdict. In considering the sufficiency of evidence, we apply a limited standard of review. Where a fact issue is presented before a court sitting with a jury, and there is substantial evidence to support the jury verdict, the verdict will stand . . .
>
> "We review the evidence in a light most favorable to the prevailing party. We will reverse only where there is a lack of substantial evidence to support the judgment . . .
>
> . . .

4

"If there is conflicting evidence in the record, the credibility and weight given to such conflicting evidence is the province of the jury and not this Court . . .

"If there is substantial evidence in the record to support the finding of the jury, then we must sustain the trial court's action in denying the plaintiff's motion for a directed verdict . . ."

In addition in an action to quiet title, plaintiff must succeed on the strength of his own title and not on the weakness of the defendant's title. McAlpin v. Smith (1950), 123 Mont. 391, 395, 213 P.2d 602, 603.

In substance, plaintiff contends that his surveyor used previous surveys and did not make a retracement survey of the original general land office survey. As a result, plaintiff contends Survey 6056 is entitled to be treated as correct in all respects. While there is some factual basis in the record for these contentions, that argument disregards the standard of review applied by this Court. Our first step is to determine if there is substantial evidence to support the verdict of the jury.

With the aim of confirming the accuracy or inaccuracy of Survey 6056, Surveyor Smith made an extended study of the records in the county and an extended search on the ground for the location of the various township lines, section lines, and other survey points. Smith, who was engaged by the defendant, testified to the significant conflict in distances between two original surveys prepared by surveyors employed by the general land office in early years. The result was a difference in one direction of measured distances up to 320 feet and in the other direction between 150 and 200 feet. Smith also testified that he could not determine the survey points used as a basis for various locations by Surveyor Hersman, who prepared Survey 6056 for plaintiff, and Mr. Medland, a previous surveyor upon whom

5

Hersman had relied. Smith testified that the northwest corner of Section 3 was a "lost corner," which means that the monument and its accessories were destroyed and cannot be replaced by anything other than proportional measurement from other points. Smith also testified that he found errors in Survey 6056 and that the corner used as a basic point in Survey 6056 was incorrect. Smith concluded that Survey 6056 did not correctly reflect the boundary line between the plaintiff's and defendant's property. He also testified that the evidence failed to show that the existing fence was not the proper boundary between plaintiff and defendant.

Surveyor Lautern affirmed Smith's testimony in part. Based upon information furnished by both Hersman and Smith, Lautern testified that he was unable to locate the appropriate corners.

The record shows there is substantial evidence to support the jury verdict against the plaintiff. While there is conflicting evidence, the credibility and weight of the evidence is the province of the jury. We therefore affirm the verdict and judgment with regard to the sufficiency of the evidence to support the verdict against the plaintiff on his complaint to quiet title according to Survey 6056.

II

Does substantial evidence support the verdict quieting title in favor of defendant on his counterclaim?

Plaintiff argues that there is insufficient evidence to establish that the boundary fence, which existed for more than 39 years, was the agreed boundary between the plaintiff and defendant. Defendant contends to the contrary.

We stated the law regarding the establishment of an agreed boundary line in a similar case, Christie v. Papke (Mont. 1983), 657 P.2d 88, 88-89, 39 St.Rep. 2054, 2055-56:

6

"Although we have recognized the right of adjoining property owners to establish an agreed boundary line (Myrick v. Peet (1919) 56 Mont. 13, 180 P. 574), under Townsend v. Kuokol the parties are required to prove by clear and convincing evidence all elements of an implied agreed boundary. In Townsend, 148 Mont. 1, at 6, 416 P.2d 532, at 535, we stated:

'[i]n order to establish an agreed boundary line, the evidence must show more than mere acquiescence and occupancy for the time prescribed by the statute of limitations; it must go further and show that there was uncertainty in the location of the line, that there was an agreement among the coterminus owners, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith.'"

The facts in evidence here are sufficient to meet the standard of Townsend.

(1) Uncertainty of boundary line. This uncertainty is clearly established by the evidence which, as previously mentioned, was directly contradictory as to whether it had been possible to establish a boundary line by Survey 6056. There was substantial evidence showing that it was impossible to establish such a boundary line by surveying measurement. In addition, the defendant testified with regard to the uncertainty as to the line over a span of years.

(2) Express or implied agreement between owners. There are a number of facts which establish an agreement between plaintiff and defendant. As previously mentioned, the boundary fences in question have been in place for more than 39 years and prior to plaintiff's ownership of the property. There is no conflict in the evidence that defendant cleared timber from 20 acres in the disputed area in 1958 and thereafter continuously cropped the land, without objection or question on the part of plaintiff. The carving on the rock face of the large rock formation in the disputed area also constitutes evidence of agreement. The evidence also shows that in 1975 plaintiff asked defendant's permission to

7

complete a drainage ditch across defendant's land. Before the plaintiff was allowed to proceed with work on the ditch, he was required to obtain agreement on the part of the defendant. After a discussion regarding the agreement, defendant prepared, and defendant and plaintiff signed the following written agreement:

> "Permission is hereby granted to Kenneth and Alice Funk whereby they may drain water from ditched portions of their farm across that part of the Robbin Hereford Ranch known as the 'Big Rock' area. (An already existing ditch.)

> "It is understood that the Robbin portion of the ditch is to be cleaned and improved with a backhoe in such a way as to provide good drainage into Rose Creek and at the same time minimize any barriers which the ditch may cause to livestock.

> "Robbin Hereford Ranch reserves the right to revoke the use of the ditch in the event that future flooding or water damage is determined to be excessive."

Testimony established that the "Big Rock" area was a massive rock outcropping located in the disputed area and constituted the southerly end of the boundary fence between plaintiff and defendant. While it is true that the agreement was obtained to meet the requirements of the soil conservation service, it established that plaintiff and defendant agreed that the "Big Rock" area was a part of the defendant's ranch. The parties agreed that permission was given by the defendant to plaintiff to drain water across defendant's ranch, with defendant reserving the right to revoke the use of the ditch in the event of flooding or water damage.

The evidence establishes that following execution of the agreement, plaintiff proceeded with the ditch work. As a part of that ditch work, plaintiff took down the boundary fence in question. Thereafter, at plaintiff's expense, he erected the fence again in its same location. In the course

8

of the ditch work, a very large tree stump was pulled out of the ground and left in the disputed area. Removal of the stump required major equipment work. Pursuant to defendant's request, the plaintiff moved this stump off of the disputed area and on to plaintiff's land.

All of these facts together are sufficient to show there was an agreement between the plaintiff and defendant fixing the boundary line at the location of the north/south boundary fence and that there was an actual designation of that line.

(3) Occupation of the ground in accordance with Agreement. The evidence as previously summarized clearly establishes that for many years the defendant occupied, farmed and used the land in question for livestock and farming purposes.

We conclude that there is substantial evidence to support the conclusion that the boundary fence constituted the actual boundary by agreement between plaintiff and defendant. We affirm the verdict and judgment in that regard.

III

Did the trial court commit reversible error in making certain evidentiary rulings?

Plaintiff objects to a number of evidentiary rulings by the District Court. The majority of these contentions do not meet the requirement of Rule 103, M.R.Evid. which in pertinent part states:

> "(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ."

In most instances the plaintiff has failed to show where a substantial right was affected by the rulings.

9

Mrs. Funk was asked in the course of her direct examination if there was any intention of recognizing the old fence line as the true boundary when the Agreement regarding the ditch line was executed. The court sustained the objection to the answer to that question. At that time the Agreement had not been admitted into evidence. When it was subsequently admitted, no rebuttal testimony was offered by the plaintiff. We find no abuse of discretion by the District Court and no substantial right of the plaintiff affected.

Plaintiff objects to the court's refusal to allow Hersman to testify as to whether he knew of any other surveys in the area. The question was not whether he had relied on any other surveys, but rather whether he knew of any other surveys. Under that circumstance, the existence of other surveys is irrelevant and the ruling of the District Court was correct.

The plaintiffs also objected to the introduction of the Agreement regarding the drainage ditch, the defendant's photograph of his carving on the rock and certain newspaper articles. These exhibits were relevant as defined in Rule 401, M.R.Evid. They each tended to prove the relevant facts for which they were offered. In addition, plaintiff failed to demonstrate how the admission of the exhibits affected any substantial right. We affirm these rulings of the District Court.

IV

Did the trial court err in giving and refusing certain instructions?

Plaintiff contends the District Court erred in refusing plaintiff's proposed Jury Instruction No. 7. That instruction was adequately covered by the court's

10

Instructions Nos. 16 and 17. There was no error in such refusal.

Plaintiff objects to Instruction No. 16 for the reason that there was allegedly no evidence of a boundary line by acquiescence or implied agreement so that the reference to "five years" was improper and misleading. As previously held, there was evidence of a boundary line by agreement of the parties, so this argument is inappropriate.

Plaintiff objects to Instructions Nos. 11 and 18, contending that they are contrary or inconsistent. Instruction No. 11 instructs that the original survey must, whenever possible, be retraced, since it cannot be disregarded or needlessly altered after property rights have been acquired in reliance upon it. Instruction No. 18 instructs that in making its decision the jury is not to consider or conjecture as to the affect of the decision on the boundaries or corners of adjacent lands owned by persons not parties to this suit. We find no inconsistency between these instructions.

Plaintiff argues that Instruction No. 6 should not have been given because there was no admissible evidence as to an agreement of a boundary line. We have held to the contrary.

V

Did the trial court err in denying the plaintiff's motion to quash defendant's costs?

Plaintiff first objects to defendant's memorandum of costs as not being timely filed. The verdict of the jury was rendered June 23, 1983. The memorandum of costs and disbursements was filed July 8, 1983. Notice of entry of judgment was given on July 14, 1983.

Section 25-10-501, MCA provides that the party who claims costs must deliver a memorandum to the clerk and serve

11

it upon the adverse party "within 5 days after the verdict or notice of the decision of the court . . . or, if the entry of the judgment on the verdict or decision be stayed, then before such entry is made . . .." This section was construed in Poeppel v. Fisher (1977), 175 Mont. 136, 142, 572 P.2d 912, 915:

> "This Court has held that the five day period allowed for filing of a memorandum of costs and disbursements 'is computed from the day the court enters judgment, not from the day the court orally announces its decision.'. . . The District Court's ruling on post-trial motions delayed entry of judgment until June 24, 1976. Plaintiff filed his memorandum of costs and disbursements prior to entry of judgment, on April 26, 1976, and such filing was timely."

Applying this rule, we hold that the memorandum of costs and disbursements was timely filed and served.

Plaintiff objects to allowing expenses claimed for copies of public documents and for the preparation of maps and surveys by Mr. Smith and preparation of maps charged by Mr. Lautern. Section 25-10-201, MCA in pertinent part provides:

> "A party to whom costs are awarded . . . is entitled to include in his bill of costs his necessary disbursements, as follows:
>
> . . .
>
> "(4) the legal fees paid for filing and recording papers and certified copies thereof necessarily used in the action or in the trial;
>
> . . .
>
> "(8) the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; . . ."

In Johnson v. Jarrett (1976), 169 Mont. 408, 417, 548 P.2d 144, 149, this Court held that the cost of preparation of maps and surveys are allowed where necessary to explain the facts and location in issue. The record shows that surveyors Smith and Lautern prepared maps, surveys and charts

12

bearing on the boundaries in question and demonstrating the lack of accuracy of Survey 6056. These were properly prepared for the express purpose of explaining the factual situation to the jury and court.

Plaintiff also objected to the allowance of costs where they were not actually certified copies of public documents. There was no issue made of the necessity for certification and the instruments were therefore admitted to be copies of public documents.

The costs were properly allowed.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

13