No. 89-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

VIOLET L. SMITHERS and JAMES J. AKER,

Plaintiffs and Respondents,

-v-

DONALD HAGERMAN and BERNIDE E. HAGERMAN,

Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and for the County of Flathead,
                The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Lane K. Bennett, Kalispell, Montana

        For Respondent:

        James C. Bartlett; Hash, O'Brien & Bartlett;
        Kalispell, Montana

Submitted on Briefs:   June 7, 1990

Decided:   August 17, 1990

FILED
Filed:
AUG 17 1990
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In a boundary dispute, the District Court for the Eleventh Judicial District, Flathead County, ruled in favor of plaintiffs, ordered that defendants remove their encroachments on plaintiffs' land and awarded damages in the amount of $7,159. Defendants appeal. We affirm.

The issues for our consideration are:

1. Did the District Court err in ruling that the plaintiffs proved by a preponderance of the evidence that their southern boundary actually lies on a survey line which describes defendants' northern boundary?

2. Did the District Court err in failing to find that a valid parol agreement was entered into by the parties setting the disputed boundary as the existing fence?

3. Did the District Court err in failing to find that plaintiffs lost the right to prevail based upon estoppel, laches and adverse possession?

4. Did the District Court err in awarding damages to plaintiffs?

This is a boundary line dispute between the owners of adjacent property in Flathead County. The properties are adjoined at the plaintiffs' (Aker and Smithers) southern border and the defendants' (Hagermans) northern border. In essence, the dispute involves whether an existing fence between the property represents the true property lines of the parties. Maintaining that it did not, plaintiffs demanded defendants remove all encroachments, including

2

a garage and a septic system, which were on their property. Defendants refused to do so, maintaining that the fence truly represented the property lines. This lawsuit resulted.

The plaintiffs' property which is north of the defendants' property, was deeded to the plaintiffs in 1954. Neither of the plaintiffs subdivided the property. The metes and bounds description established that the south line of the tract was parallel to the south line of the section and 997.5 feet north of that south line.

In 1955 the defendants acquired a rectangular tract lying to the south of the plaintiffs' tract. The metes and bounds description in that deed established that the north line of the defendants' tract was parallel to the south line of the section and 997.5 feet north of the south line of the section.

Prior to 1952 plaintiff Aker's father erected a fence near the south boundary of the plaintiffs' property. He did not obtain a survey. He "eyeballed" the fence line. The fence has never been moved and has been maintained by the plaintiffs.

The District Court found that until 1971, plaintiff Aker believed that the fence was on the south boundary line of the plaintiffs' tract. Up to that date he used the property north of the fence.

In 1971, Hagermans obtained a survey of their property. Mr. Marquardt, the surveyor, notified Hagermans that the north boundary of their property lay to the south of the fence. The survey also demonstrated that fact. Hagermans requested a boundary agreement

3

with the plaintiffs which would provide that the Hagermans' property ran up to the fence. The plaintiffs refused to enter into such an agreement.

Hagermans used the land south of the fence for their horses, one year's oat crop, a sawmill (abandoned in the 1960's), and for the storage of building materials. At some time prior to 1985, plaintiffs commissioned Marquardt to reflag the survey pins that had been placed for the 1971 survey. Hagermans concede that plaintiffs never falsely represented their position regarding the true boundary and that they always claimed that the property line was as shown in the 1971 survey.

In 1983 a tenant of Hagermans began building a garage which encroached upon the south line of the plaintiffs' property as described by the Marquardt 1971 survey. Plaintiffs notified the tenant that he was improperly building on their property. The tenant passed that information on to the Hagermans. Notwithstanding that notice, the tenant completed construction of the building. Plaintiffs did not take any legal action at that time.

In 1985 Hagermans began construction of a septic system on the property south of the fence but north of the surveyed property line. Plaintiffs then filed this action demanding that Hagermans remove their encroachments.

The District Court concluded the boundary between the parties is the boundary described in Marquardt's 1971 survey. From that decision, Hagermans appeal.

Did the District Court err in ruling that the plaintiffs proved by a preponderance of the evidence that their southern boundary actually lies on a survey line which describes defendants' northern boundary?

Hagermans maintain that plaintiffs have failed to substantiate their claim because they never surveyed their property. They maintain that both parcels must be surveyed to show a common boundary.

Plaintiffs contend that a proper survey is sufficient evidence to establish a boundary line. They further argue that when an encroachment occurred, they took timely legal action.

Relying on Christie v. Papke (1982), 201 Mont. 200, 657 P.2d 88, the District Court stated that "parties having a common boundary may agree that a presumed boundary is correct". However, it further stated that "once a true boundary is determined, the parties must conform to the true line." Hence, the District Court concluded that once the true boundary became known in 1971, it became the true boundary with which the parties must comply. We agree.

A fence does not establish a boundary line when it does not conform to the true line, even if the property owners thought it was the true line.

> Where two adjoining properties are divided by a fence,
> which both owners suppose to be on the line, such fence
> is a division fence, as between them, until the true line
> is ascertained, when they must conform to the true line.
> (citations omitted).

Pilgrim v. Kuipers (1984), 209 Mont. 177, 182, 679 P.2d 787, 790. In the case before us, when the true line was established by the 1971 survey, instituted by the Hagermans, it then became the boundary to which the parties must conform. The law does not support Hagermans' argument that all four corners of both parcels must be surveyed to establish the correct boundary. The survey established the boundary line without contradiction. In addition the description in the deeds to the plaintiffs and the Hagermans established the same common boundary line. We hold that the plaintiffs proved that their southern boundary actually lies on the survey line which also describes the Hagermans' northern boundary.

## II

Did the District Court err in failing to find that a valid parol agreement was entered into by the parties setting the disputed boundary as the existing fence?

The District Court determined that the parties never agreed to a fence-line boundary. Hagermans maintain that there was such an agreement. They argue that their construction up to the fence line was evidence of their reliance on the fence as the boundary. Hagermans urge this was a case of "mere acquiescence". Plaintiffs maintain that there never was such an agreement and that the first time Hagermans and plaintiffs learned the location of the true boundary line was after the 1971 Marquardt survey.

In Christie, a fence was located at the supposed property line for 56 years. A subsequent survey showed the actual boundary to be south of the existing fence line. Christie destroyed the

6

original fence and built a new one along the boundary indicated by the survey. Papke then destroyed the new fence and replaced it where it was located for 56 years. Christie sued. Papke maintained that the fence became the actual boundary by implied agreement resulting from the fence location on the boundary and because Christie helped to maintain the fence. This Court concluded that more than mere acquiescence was necessary, and stated:

> [T]he parties are required to prove by clear and convincing evidence all elements of an implied agreed boundary.
> In order to establish an agreed boundary line, the evidence <u>must show more than mere acquiescence</u> and occupancy for the time prescribed by the statute of limitations; it must go further and show that there was uncertainty in the location of the line, that there was an agreement among the coterminous owners, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith. (citations omitted).

<u>Christie</u>, 657 P.2d at 89.

We agree with the trial court that Hagermans have failed to show more than mere acquiescence. We further conclude that the record does not provide clear and convincing evidence of an agreement, either express or implied. We hold that the District Court did not err in failing to find that a valid parol agreement was entered into by the parties setting the disputed boundary as the existing fence.

### III

Did the District Court err in failing to find that plaintiffs lost the right to prevail based upon estoppel, laches and adverse possession?

7

Hagermans urge that as a matter of equity, either estoppel, laches or adverse possession should be applied because they relied on the fence as the boundary and because of acquiescence on the part of the plaintiffs.

Plaintiffs argue that there was no cause of action until there was an encroachment. They contend that the first encroachment was not until 1982 or 1983 when a garage was built on their land.

The District Court agreed and made the following significant findings of fact and conclusions of law:

## FINDINGS OF FACT

18. In 1982 or 1983, a tenant of [Hagermans] began building a garage which encroached upon the boundary line as described by Marquardt's survey. . . .

19. In 1985 [Hagermans] began construction of a septic system on property which lay south of the fence, but north of boundary line as surveyed by Marquardt. . . .

21. . . . [Hagermans] sold property to third parties based upon the Marquardt survey.

22. [Hagermans] did not cultivate or improve the property between the Marquardt survey line and the fence.

## CONCLUSIONS OF LAW

5. Once the true boundary became known in 1971, [Hagermans] made only one demand for the property in dispute, which was rebuffed; they made no additional claim adverse to Plaintiffs until 1983.

6. [Hagermans] never occupied the property prior to 1983, in such a manner to establish adverse possession or easement.

7. The first incident of actual trespass on Plaintiffs' land was in 1983, when [Hagermans'] tenant built a garage over the survey line. [Hagermans] again encroached on Plaintiffs' property in 1985, when the septic system was partially built on Plaintiffs' property. Plaintiffs brought this action for ejectment and rents. Therefore,

8

the defenses of statutes of limitations and laches are unavailing.

> 8. Plaintiff at no time falsely represented their position to [Hagermans]. [Hagermans] did not rely upon the fence as their northern boundary in the subsequent land sale to third parties. Thus [Hagermans] may not rely upon estoppel.

For a claim of adverse possession, it must be proved that the property was claimed under color of title or by actual, visible, exclusive, hostile and continuous possession during the statutory period of five years, and the party claiming adverse possession must have paid taxes on the property for the full statutory period. Perusich v. Meier (1987), 229 Mont. 458, 747 P.2d 857. From the above findings and conclusions, it is clear that Hagermans failed to prove the elements of a claim for adverse possession.

The Hagermans also attempt to argue that they have established title by equitable estoppel and laches. We do not find it necessary to rule on any possible claim of title as a result of either equitable estoppel or laches. In Mellem v. Kalispell Laundry & Dry Cleaners (1989), 237 Mont. 439, 774 P.2d 390, this Court set out the elements of equitable estoppel:

> 1. There must be conduct - acts, language, or silence - amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon . . . . 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon

9

it in such a manner as to change his position for the worse.

Hagermans fail to establish any facts which showed a misrepresentation or concealment. The Hagermans did not rely on the fence line as a boundary and they sold parcels in accordance with the 1971 survey. The District Court concluded that the Hagermans failed to prove the essential elements of equitable estoppel and we agree with that determination.

Similarly, a claim of laches by the Hagermans is without merit. Laches exists where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable. Laches is appropriate where a party is actually or presumptively aware of his rights but fails to act. A party is held to be aware of their rights where the circumstances he or she knows of are such as to put an ordinary prudent person on inquiry. See Sperry v. Montana State Univ. (Mont. 1989), 778 P.2d 895, 46 St.Rep. 1482. The first encroachment of plaintiffs' land occurred in 1983 and then again in 1985. Plaintiffs filed this action in 1986. We agree with the determination by the District Court that there was no unexplained delay of a sufficient duration to justify a finding of laches.

We hold that the District Court correctly found that the Hagermans failed to establish adverse possession, equitable estoppel or laches.

IV

Did the District Court err in awarding damages to plaintiffs?

Hagermans maintain that the District Court's award of damage

10

was in error. Plaintiff was the only witness to testify regarding damages. He estimated damages based upon an estimated rental value. Hagermans urge his testimony on damages was totally lacking in credibility and merit.

Plaintiffs point out that Hagermans had the opportunity to cross examine Mr. Aker. Plaintiffs maintain that in accordance with § 26-1-301, MCA, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact. They argue that under § 26-1-302, MCA, a witness is presumed to speak the truth, and the court is the exclusive judge of the witness' credibility. Mr. Aker was asked how much he would charge a third person to erect and maintain a portion of garage on or to place a sewage system under his property. He testified without contradiction that the rental value of the property on which the septic system lies is $30 per month. He further testified that the rental value of the property on which the garage exists is $120 per month. The District Court awarded plaintiffs damages of $7,159. Plaintiffs urge that as long as Mr. Aker's statement of the amount he would charge for compensation is reasonable and uncontradicted, the trial judge was free to adopt the testimony as true and sufficient. We agree.

Section 27-1-318, MCA, provides:

**Wrongful occupation of real property.** The detriment caused by the wrongful occupation of real property in cases not otherwise provided for in this code is deemed to be the value of the use of the property for the time of such occupation . . . and the costs, if any, of recovering the possession.

The District Court properly considered the rental value provided

by the testimony of Mr. Aker, noting that such testimony was uncontradicted. Furthermore, the District Court is the exclusive judge of the witness' credibility. We hold that the District Court did not err in awarding damages to plaintiffs.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices