ORIGINAL

**FILED**

11/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0266

DA 21-0266

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 280

---

MICKALE CARTER and EUGENE KIRSCHBAUM,

Plaintiffs and Appellants,

v.

BADROCK RURAL FIRE DISTRICT and BADROCK FIRE
AND QUICK RESPONSE UNIT, INC., believed to be the heirs and
assigns of Badrock Rural Fire District,

Defendants and Appellees.

**FILED**

NOV 02 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

---

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-20-530B
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Mickale Carter, Attorney at Law, Columbia Falls, Montana

For Appellees:

Travis R. Ahner, Flathead County Attorney, Caitlin Overland, Deputy
County Attorney, Kalispell, Montana

---

Submitted on Briefs:  September 22, 2021

Decided:  November 2, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiffs and Appellants Mickale Carter (Mickale) and Eugene Kirschbaum (Eugene) appeal from the September 1, 2020 Order and Rationale on Pending Motions, the May 3, 2021 Order and Rationale on Cross Motions for Summary Judgment, and the May 6, 2021 Judgment issued by the Eleventh Judicial District Court, Flathead County. The District Court's orders denied the Appellants' motions for dePfault judgment and for summary judgment and granted the summary judgment motion of Defendants and Appellees Badrock Rural Fire District and Badrock Fire and Quick Response Unit, Inc. (Badrock).

¶2 We address the following dispositive issues on appeal:

*1. Did the District Court manifestly abuse its discretion by declining to enter a default judgment in favor of Appellants after Badrock did not complete service of its Answer until one day after the deadline of M. R. Civ. P. 12?*

*2. Did the District Court err when it determined the Appellants' claims were barred by the doctrine of laches?*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 1990, Douglas and Thelma Carter deeded, via warranty deed, an 80-acre plot of real property in Flathead County to their seven children—Georgia Karpovich, Steven Carter, Randall Carter, Mickale Carter, Leslie Traynor, Tracy Witt, and Kelly Willis—as joint tenants with the right of survivorship. That 80-acre plot is described as:

North One half (N1/2) of the North west Quarter (NW1/4) of Section Nine (9), Township Twenty-Nine (29), Range Twenty (20), West according to the map or plat thereof on file and of record in the office of the County Clerk and Recorder of Flathead County, Montana.

2

Douglas and Thelma reserved a life estate for themselves, which was to terminate upon the death of the survivor. Upon the deaths of Douglas and Thelma, the seven siblings would receive fee simple absolute title to the 80-acre plot of real property.

¶5 In 1992, a certificate of survey was completed for the purpose of subdividing approximately 1.31 acres from the property, to be donated to Badrock pursuant to the "occasional sale" exemption of the Montana Subdivision and Platting Act, § 76-3-207(1)(d), MCA (1991).[1] That tract (hereinafter "the Property") is described as:

> A tract of land, situated, lying, and being in the Northwest Quarter of the Northwest Quarter of Section 9, Township 29 North, Range 20 West, P.M.,M., Flathead County, Montana, and more particularly described as follows to wit:
>
> Tract 1:
> BEGINNING at the northwest corner of the Northwest Quarter of the Northwest Quarter of Section 9, Township 29 North, Range 20 West P.M.,M., Flathead County, Montana; Thence N89°01'16"E and along the north boundary of said NW1/4NW1/4 a distance of 380.00 feet to a set iron pin; Thence S00°07'10"E 150.00 feet to a set iron pin; Thence S89°01'16"W 380 feet to a point on the west boundary of said NW1/4NW1/4 and the centerline of a 60 foot county road known as Middle Road; Thence N00°07'10"N and along said west boundary and along said centerline a distance of 150.0 feet to the point of the beginning and containing 1.308 ACRES; Subject to and together with a 60 foot county road as shown hereon; subject to and together with all appurtenant assessments of record.

On August 2, 1993, Thelma transferred fee simple title of the Property to Badrock via warranty deed. The transfer of the Property by Thelma was dependent upon authorization for the sale via Power of Attorney documents (POA) signed by the seven siblings. In 1993,

---

[1] "'Occasional sale' means one sale of a division of land within any 12-month period." Section 76-3-103(7), MCA (1991).

3

before the transfer, the siblings each signed POAs regarding the Property.[2] As found by the District Court, the "POAs vary significantly in their language and several fail to contain the necessary language authorization [for] the transfer of real property."

¶6 After receiving the Property via warranty deed, Badrock set out to construct a fire station on the Property. During this process, Glacier Bank, with whom Badrock was working with on a loan, determined there "seem[ed] to be a problem" with the POAs signed by five of the seven siblings. On October 28, 1993, Glacier Bank sent Mickale a letter requesting she sign and return a new POA. Badrock did construct a fire station on the Property in 1993, and has occupied the Property ever since, making several improvements over the years.

¶7 In 1996, two of the siblings, Leslie and Kelly, transferred their interest in the 80-acre plot, excepting the Property, to their siblings via quitclaim deed. Douglas died in 2002. In 2017, the five remaining siblings transferred their interest in the 80-acre plot to Mickale and Eugene, as joint tenants with the right of survivorship. Also in 2017, Leslie and Kelly executed another quitclaim deed, transferring whatever interest they may have had in the 80-acre plot to Mickale and Eugene, as joint tenants with the right of survivorship. On March 18, 2020, Thelma died.

---

[2] Steven and Randall signed General POA documents naming Thelma as their attorney-in-fact, while the other five siblings each signed special POAs specifically regarding the donation, sale, and/or granting of an easement of the Property to Badrock. The language of the Special POAs was different in each.

4

¶8 On June 8, 2020, Mickale and Eugene filed an Action to Quiet Title in the District Court. Badrock was served with a Summons that same day. On June 26, 2020, Badrock filed a Motion to Require Joinder of Necessary Parties and Brief in Support. On June 29, 2020, Badrock filed its Answer to Action to Quiet Title, with a Certificate of Service noting it served copies of its Answer on Mickale and Eugene via first class mail on June 29, 2020. As shown on the envelopes Mickale and Eugene received, Badrock did not actually mail copies of its Answer to them until June 30, 2020. On July 14, 2020, Mickale and Eugene filed their Motion and Memorandum in Support of Motion for Summary Judgment and in the Alternative for Default Judgment. Badrock thereafter filed a motion to hold the summary judgment motion in abeyance and a motion for a scheduling order. After these motions were briefed by the parties, the District Court issued its Order and Rationale on Pending Motions on September 1, 2020. This order denied Badrock's motion to require joinder of necessary parties, granted Badrock's motion to hold Mickale and Eugene's summary judgment motion in abeyance, ordered Badrock to file a response to the summary judgment motion within 14 days following the close of discovery, and denied Mickale and Eugene's motion for default judgment. The District Court issued its Rule 16 Scheduling Order on September 30, 2020.

¶9 On December 22, 2020, following the close of discovery, Badrock filed its supplemental response to Mickale and Eugene's summary judgment motion. That same day, Badrock filed its own motion for summary judgment. No party requested a hearing, and after the parties fully briefed both summary judgment motions, the District Court issued its Order and Rationale on Cross Motions for Summary Judgment on May 3, 2021.

5

This order, in relevant part, denied Mickale and Eugene's motion for summary judgment to quiet title and granted Badrock's motion for summary judgment on Mickale and Eugene's quiet title claim. The District Court issued its Judgment on May 6, 2021, holding that Badrock held title to the Property in fee simple.

¶10 Mickale and Eugene appeal. Additional facts will be discussed as necessary below.

**STANDARD OF REVIEW**

¶11 "This Court disfavors default judgments because our policy is that litigated cases are to be decided on the merits." *Whitefish Credit Union v. Sherman*, 2012 MT 267, ¶ 7, 367 Mont. 103, 289 P.3d 174. It does not appear that this Court has previously articulated the standard of review for the denial of a motion for default judgment. We have, however, previously determined the proper standard of review for when a district court grants a motion to set aside a default judgment is a manifest abuse of discretion. *Benintendi v. Hein*, 2011 MT 298, ¶ 17, 363 Mont. 32, 265 P.3d 1239 (citing *Hoff v. Lake Cty. Abstract & Title Co.*, 2011 MT 118, ¶ 18, 360 Mont. 461, 255 P.3d 137). Because both setting aside a default judgment and denying a motion for default judgment have the same practical effect of allowing a case to go forward and be decided on the merits, the same standard of review should apply.[3] As such, we will review a district court's denial of a motion for default judgment for a manifest abuse of discretion. A manifest abuse of discretion is one

_____

[3] While we review a district court's granting of a motion to set aside a default judgment for a manifest abuse of discretion, we review a district court's denial of a motion to set aside a default judgment for only a slight abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451 (collecting cases). These differing standards of review regarding motions to set aside a default are in accordance with our policy that litigated cases are to be decided on the merits.

6

that is obvious, evident, or unmistakable. *Benintendi*, ¶ 17 (citing *Bartell v. Zabawa*, 2009 MT 204, ¶ 10, 351 Mont. 211, 214 P.3d 735).

¶12 We review summary judgment orders de novo, performing the same M. R. Civ. P. 56 analysis as the district court. *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73).

## DISCUSSION

¶13 *1. Did the District Court manifestly abuse its discretion by declining to enter a default judgment in favor of Appellants after Badrock did not complete service of its Answer until one day after the deadline of M. R. Civ. P. 12?*

¶14 M. R. Civ. P. 12(a)(1)(A) sets a deadline for a defendant to serve its answer after being served with a summons and complaint: "[a] defendant must serve an answer within 21 days after being served with the summons and complaint[.]" As Badrock was served with the summons and complaint on June 8, 2020, its answer was due on June 29, 2020. While Badrock did file its answer with the District Court on that date, it did not mail copies of its answer to Mickale and Eugene until June 30, 2020. Service of pleadings filed after the original complaint, e.g., an answer, are governed by Rule 5, the relevant portion of which states, "[a] paper is served under this rule by . . . mailing it to the person's last known address—in which event service is complete upon mailing[.]" M. R. Civ. P. 5(b)(2)(C). Because Badrock did not complete service by mailing its answer to Mickale and Eugene until June 30, 2020, its answer was one day late. Mickale and Eugene assert they are

7

entitled to a default judgment in their favor due to the delay. Badrock responds that the one-day delay in serving its answer should not overcome this Court's principle that cases should be tried on the merits. We agree with Badrock.

¶15 We have long held that this Court's principle "is that every litigated case should be tried on the merits and that judgments by default are not favored. This principle has been enunciated in practically all of our decisions addressing the issue and is the cornerstone of appellate review of default." *Lords v. Newman*, 212 Mont. 359, 363, 688 P.2d 290, 293 (1984). In denying the motion for default judgment in this case, the District Court held "[Badrock] has filed its Answer, therefore, despite the fact that the filing was untimely, [Badrock] is no longer in default." Mickale and Eugene assert this finding is "contrary to the letter and to the spirit" of Rule 12 and argue "if a defendant can cure a default by simply serving an answer, that would result in there being no time limit at all, making a mockery of Rule 12's 21-day service requirement." As previously noted, we will review the District Court's denial of Mickale and Eugene's motion for default judgment for a manifest abuse of discretion.

¶16 Here, we cannot find the District Court committed a manifest abuse of discretion by denying the motion for default judgment. Default was not requested or entered prior to Badrock filing its answer on June 29, 2020, or completing service on June 30, 2020. Even if a default had been entered against Badrock in this case, the speed with which it served its answer after the due date—one day—did not prejudice Mickale and Eugene. In its briefing before the District Court, Badrock argued, based on its calculation of time under M. R. Civ. P. 6, its answer was due on June 30, 2020, and was therefore not late. As the

8

actual due date was June 29, it is clear that Badrock's calculations were wrong. It appears Badrock's "assumption of the date of service was an honest mistake--and not one dreamed up to excuse the neglect." *Worstell v. Devine*, 135 Mont. 1, 5, 335 P.2d 305, 307 (1959). In *Worstell*, an attorney mistakenly believed service was made on the day his client delivered him a copy of the papers in a foreclosure case, rather than the day they were actually served on his client. The plaintiff moved to default his client on the twenty-first day after service was made. Three days after the district court entered a default judgment, the attorney moved to set aside the default and filed a proposed answer. *Worstell*, 135 Mont. at 2-3, 335 P.2d at 305-06. The district court denied the motion to set aside the default, but on appeal we set aside the default and noted decisions regarding setting aside defaults "turn on promptness and diligence in moving to set aside the default and on whether or not a showing of a meritorious defense is made." *Worstell*, 135 Mont. at 6, 335 P.2d at 307. Unlike in *Worstell*, here there was no default to be set aside, but, like in *Worstell*, Badrock made a mistake on the date of service and promptly filed its answer. Any doubt regarding whether Badrock's neglect by serving its answer one day late was excusable or not "should be resolved in favor of a trial on the merits." *Worstell*, 135 Mont. at 6, 335 P.2d at 307.

¶17 Since even before Montana gained statehood, this Court has consistently held to its policy that cases are to be tried on the merits and default judgments are not favored: "[a]s a general rule, however, in cases where, as here, the application [to set aside default] is made so immediately after default entered as that no considerable delay to the plaintiff is to be occasioned by permitting a defense on the merits, the court ought to incline to

9

relieve." *Benedict v. Spendiff*, 9 Mont. 85, 88, 22 P. 500, 500 (1889) (quoting *Watson v. San Francisco & H. B. R. Co.*, 41 Cal. 17, 20 (Cal. 1871). Once more, we "reiterate the policy that disputes should be resolved on the merits." *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 2009 MT 396, ¶ 28, 353 Mont. 399, 220 P.3d 661 (citing *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451). The District Court did not manifestly abuse its discretion by denying Mickale and Eugene's motion for default judgment made after Badrock's answer was filed and served.

¶18  *2. Did the District Court err when it determined the Appellants' claims were barred by the doctrine of laches?*

¶19  The District Court, in its Order and Rationale on Cross Motions for Summary Judgment, found Mickale and Eugene's claim to quiet title to the Property was barred by both the applicable statute of limitations and in equity by the doctrine of laches. As we determine Mickale and Eugene's claim is barred in equity by the doctrine of laches, and that issue is dipositive, it is not necessary to address the parties' arguments regarding the statute of limitations.

¶20  In its answer, Badrock raised the affirmative defense that Mickale and Eugene's claims were barred by the doctrine of laches. Laches is an affirmative defense which is required to be raised in responding to a pleading by M. R. Civ. P. 8(c)(1). "The doctrine of laches is an equitable remedy . . . 'by which a court denies relief to a claimant who has unreasonably delayed or been negligent in asserting a claim, when the delay or negligence has prejudiced the party against whom relief is sought.'" *Algee v. Hren*, 2016 MT 166, ¶ 8, 384 Mont. 93, 375 P.3d 386 (quoting *Anderson v. Stokes*, 2007 MT 166, ¶ 19, 338

10

Mont. 118, 163 P.3d 1273). "To determine whether laches applies, a court must find: (1) the party against whom the defense is asserted lacked diligence in asserting a claim; and (2) that lack of diligence resulted in prejudice to the party asserting the defense." *Algee*, ¶ 8 (citing *Wicklund v. Sundheim*, 2016 MT 62, ¶ 40, 383 Mont. 1, 367 P.3d 403). "The purpose of laches is to discourage stale demands by the court refusing to interfere where there has been gross laches in prosecuting rights, or where long acquiescence in assertion of adverse rights has occurred." *Castillo v. Franks*, 213 Mont. 232, 241, 690 P.2d 425, 429 (1984).

¶21 "Laches is appropriate where a party is actually or presumptively aware of his rights but fails to act. A party is held to be aware of their rights where the circumstances he or she knows of are such as to put an ordinary prudent person on inquiry." *Smithers v. Hagerman*, 244 Mont. 182, 190, 797 P.2d 177, 182 (1990). In this case, approximately a year before receiving the Property, Badrock had been informed the Carters wished to donate about an acre on Middle Road so Badrock could construct a fire station. When Thelma acted to complete this intention she deeded the Property to Badrock, dependent upon authorization for the transfer via POA signed by the seven siblings. Thereafter, the seven siblings each signed POAs regarding the Property and Badrock. Badrock then received the Property via warranty deed on August 2, 1993. That warranty deed contained signatures from Thelma as POA for all seven siblings. After receiving the Property, Badrock constructed a fire station, made several other valuable improvements, and has occupied the Property since 1993.

11

¶22    Mickale was notified in 1993 that there "seem[ed] to be a problem" with the POAs used by Thelma to transfer title of the Property to Badrock. At the time she was notified, it was requested that she sign a new POA to clean up the transfer. Rather than either signing a new POA as requested to ensure the donation was properly made or asserting Thelma's transfer of the property via the warranty deed was defective at the time, Mickale did nothing for well over twenty years. In 1996, two of Mickale's siblings, Leslie and Kelly, transferred their interest in the 80-acre plot, excepting the Property, to the remaining siblings via quitclaim deed. Since 1993, Mickale has been aware there may have been problems with the warranty deed which transferred the Property to Badrock and that, as a remainderman of Douglas and Thelma's life estate, her inheritance of the 80-acre plot of land may be affected.[4] The circumstances are clear enough "to put an ordinary prudent person on inquiry." *Smithers*, 244 Mont. at 190, 797 P.2d at 182. Nothing prevented Mickale from pursuing her claim in a timely manner. Rather than pursuing her claim, however, Mickale allowed the transfer to occur and for Badrock to move into the Property, construct a fire station, and operate for 27 years prior to filing the quiet title action in this case.[5] Mickale's quiet title action lacked diligence, and, after improving and openly operating from the Property for nearly 30 years, Badrock would be prejudiced by

---

[4] Mickale is a licensed attorney, admitted to the Montana bar in 1984.

[5] Related to the statute of limitations argument we do not address in this Opinion, Mickale asserts she could not file an action until possession of the 80-acre plot passed to her upon Thelma's death in 2020. We are not persuaded by this argument because, as a remainderman of Douglas and Thelma's life estate, Mickale had an interest in her inheritance not being injured and could have brought an action against either Thelma for injuring her interest in the inheritance by the transfer or against Badrock to return possession of the Property. *See* §§ 70-16-102 and -105, MCA.

12

transferring the Property to Mickale. As noted by the District Court, "[r]eturning possession of the one-acre plot to Mickale at this time would be extremely inequitable." Because Mickale did not pursue her claim with diligence and Badrock was prejudiced by the extreme delay, the District Court correctly applied laches to bar Mickale and Eugene's claim to void Badrock's title to the Property by quieting title in their favor in this case. *Algee*, ¶ 8.

¶23 While we have found the District Court correctly applied laches, we must also briefly address Mickale and Eugene's assertion that Badrock cannot rely on laches due to unclean hands. "[I]t is a long established maxim of jurisprudence that '[p]arties must not expect relief in equity, unless they come into court with clean hands.'" *In re Marriage of Burner*, 246 Mont. 394, 397, 803 P.2d 1099, 1100 (1991) (quoting *Mitchell v. Leland Co.*, 246 F. 103, 107 (9th Cir. 1917)). "A person may not take advantage of the person's own wrong." Section 1-3-208, MCA. Mickale and Eugene contend Badrock cannot come to the court in equity because it knew title to the Property was defective since 1993 and therefore it was Badrock who should have filed to quiet title. We are not persuaded by this argument.

¶24 "Persons in possession may wait until their possession is disturbed or until their title is attacked before taking steps to vindicate their right." *Peterson v. Hopkins*, 210 Mont. 429, 437-38, 684 P.2d 1061, 1065 (1984) (citations omitted). Badrock has been in continuous possession of the Property since 1993, and has made numerous open and notorious improvements to the Property in that time. Badrock simply received a donation of land—one which had been in the works for almost a year by the time of the transfer—

13

and there was no fraud or dishonesty in its acceptance of the donation. While there were, as the District Court stated, some "technical difficulties" with the warranty deed, Badrock did not take advantage of its own wrong by not doing more to clarify the status of title. As in *Peterson*, Badrock "was under no duty to seek a judicial determination of [its] right to title until that title was challenged." *Peterson*, 210 Mont. at 440, 684 P.2d at 1066. We reject Mickale and Eugene's assertion that Badrock cannot come to court in equity due to "unclean hands," and therefore laches is applicable in this case.

¶25 Upon our de novo review, we determine there are no genuine issues of material fact in this case and Badrock was entitled to judgment as a matter of law. *Kucera*, ¶ 6. The District Court therefore correctly granted summary judgment in Badrock's favor as Mickale and Eugene's claims are barred by the doctrine of laches.

## CONCLUSION

¶26 The District Court did not manifestly abuse its discretion by declining to enter a default judgment after Badrock mailed its answer one day late. In addition, the District Court correctly granted Badrock summary judgment because Mickale and Eugene's claims against Badrock are barred by the doctrine of laches.

¶27 Affirmed.

_____
Justice

We concur:

_____

14

_____

_____

_____
Justices