No. 03-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 331N

IN THE MATTER OF K.M.J.,

Youth in Need of Care.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DN 2000-105
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kathryn S. Syth, LaRance, Syth & Associates PC, Billings, Montana

For Respondent:

Honorable Mike McGrath, Montana Attorney General, Jennifer Anders,
Assistant Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone
County Attorney, Richard Helm, Deputy County Attorney, Billings,
Montana; Patrick E. Kenney, Guardian ad Litem for K.M.J., Billings,
Montana

Submitted on Briefs: October 24, 2003

Decided: December 2, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Report Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 S.L., K.M.J.'s mother (S.L.), appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County, terminating her parental rights to K.M.J.

¶3 The following issues are raised on appeal. We affirm on Issue 2 and decline to address Issue 1.

¶4 1. Does K.M.J. qualify as a "youth in need of care," where the natural father cares for K.M.J. but the natural mother has not completed her treatment plan?

¶5 2. Did the District Court err in terminating S.L.'s parental rights?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 K.M.J. was born on March 20, 2000. S.L. is the natural mother of K.M.J. and C.V. is the natural father.

¶7 On November 24, 2000, the Department of Public Health and Human Services (the Department) filed a petition for temporary legal custody as a result of a referral. This referral indicated that S.L. was seen violently shaking K.M.J., then eight months old, and screaming at her. Indeed, S.L. admitted to the act but attempted to minimize it.

¶8 S.L. consented to the removal of K.M.J. from her home, and did not contest the Department's request to grant the Department temporary legal custody of K.M.J. for six months.

¶9 On January 3, 2001, the District Court granted the Department temporary legal

2

custody. A treatment plan was then prepared for S.L., which covered the period from January 9, 2001, to March 22, 2001. The District Court approved this treatment plan. S.L. did not sign this or any of the following treatment plans.

¶10 S.L. then began a relationship with C.H., a convicted sex offender, and communicated her intent to marry C.H. to the Department. Social workers advised S.L. against her relationship with C.H., as the relationship could jeopardize her ability to regain custody of K.M.J.

¶11 Social workers noted that during visits with K.M.J., S.L. did not know how to change her diaper or to buy appropriate food or clothing for the child. Additionally, they noted that K.M.J. bonded more with S.L.'s mother.

¶12 On June 26, 2001, the Department petitioned for permanent legal custody of K.M.J., but then decided to extend temporary legal custody for another six months. A second treatment plan was prepared for S.L., which covered the period from June 1, 2001, to September 30, 2001. Upon its expiration, a third treatment plan was prepared, covering the period from September 30, 2001, to December 31, 2001. S.L. resisted approval of a fourth treatment plan, which covered the period from January 14, 2002, to April 1, 2002. She claimed that the plan was impossible to complete given that she had moved to Oregon. Indeed, S.L. had married C.H., and moved to Oregon.

¶13 The social worker who handled K.M.J.'s case from its inception testified that the primary goal of all four treatment plans, prepared specifically for S.L., was to help S.L. understand K.M.J.'s needs. However, she noted that the goal was not achieved because S.L. did not even have minimally acceptable parenting skills.

¶14 S.L. did not finish counseling; did not provide urinalysis samples; did not provide a

3

written family medical history; did not sign all required releases; did not provide a family social history; and did not complete anger management classes. The Department filed a petition for termination of S.L.'s parental rights on July 30, 2002. The District Court took evidence on the Department's petition and ordered S.L.'s parental rights terminated on January 27, 2003.

¶15 S.L. now appeals the District Court's judgment.

## STANDARD OF REVIEW

¶16 We review a district court's termination of parental rights for an abuse of discretion. *In re D.V.*, 2003 MT 160, ¶ 14, 316 Mont. 282, ¶ 14, 70 P.3d 1253, ¶ 14. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re K.C.H.*, 2003 MT 125, ¶ 11, 316 Mont. 13, ¶ 11, 68 P.3d 788, ¶ 11 (citation omitted). A district court must make specific factual findings in order to satisfy the statutory requirements for terminating parental rights, and we review those findings to determine whether they are clearly erroneous. *In re J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, ¶ 7, 67 P.3d 242, ¶ 7. We review a district court's conclusions of law for correctness. *J.V.*, ¶ 7.

## DISCUSSION

¶17 **1. Does K.M.J. qualify as a "youth in need of care," where the natural father cares for K.M.J. but the natural mother has not completed her treatment plan?**

¶18 S.L. argues that K.M.J. is no longer a "youth in need of care." She maintains that since finding a child as a "youth in need of care" is a condition precedent to establishment of a treatment plan, and since C.V. successfully completed his treatment plan, K.M.J. no longer needs protection from the Department. However, S.L. only raised her argument

4

summarily in the following objection at the October 25, 2003 hearing.

> THE COURT: Ms. Syth [Counsel for S.L.], do you have any objection or comment to that [the Department's motion for default against S.L. for failing to appear at the hearing terminating her parental rights.]?

> MS. SYTH: I would object. I've been in contact with my client. She objects. I would move that we dismiss the entire case. *The child has been returned to the father. This is now a custody case between the parents.* But she's been in contact with me, so I don't think a default is appropriate. [Emphasis added.]

¶19 And, she again summarily raised her argument in her Proposed Findings of Fact, the pertinent part of which states:

> 3. [S.L.] . . . did not appear, but had been in contact with her counsel, who moved the [District] Court on her behalf for dismissal of the Petition to Terminate Parental Rights and leave to enter into a parenting plan, given that the Department had returned the child to the care of her father, and has no further concerns regarding his ability to care for and/or protect the child. Counsel further advised the Court that . . . [S.L.] was amenable to a parenting plan allowing for only supervised visitation with the child.

¶20 S.L. cited no authority to support her argument that the issue concerns one of custody rather than adjudication of K.M.J. as a youth in need of care. S.L.'s mention of the fact that K.M.J. had been returned to the natural father did little to educate the District Court as to the legal argument she now presents on appeal. S.L. filed no brief, nor did she cite the Court to any legal authority in support of her position. We have repeatedly held that in order to preserve an objection for appellate review, a party must timely object and state specifically the basis for the objection. *Nelson v. Farmers Union Mut. Ins. Co.*, 2003 MT 101, ¶ 32, 315 Mont. 268, ¶ 32, 68 P.3d 689, ¶ 32; *Schuff v. Jackson*, 2002 MT 215, ¶ 30, 311 Mont. 312, ¶ 30, 55 P.3d 387, ¶ 30. Because S.L. did not state specifically the basis for her objection, we conclude that she did not adequately preserve her objection in the District Court.

¶21 Therefore, we decline to address whether K.M.J. qualifies as a youth in need of care,

since the child has been returned to the natural father.

¶22 **2.     Did the District Court err in terminating S.L.'s parental rights?**

¶23     S.L. argues that because no treatment plan was in effect at the time the District Court terminated her parental rights, clear and convincing evidence did not exist that she failed to comply with her treatment plan, and the District Court erred in finding as much.

¶24     The State contends that findings relative to S.L.'s compliance or noncompliance with a fifth treatment plan were unnecessary, since S.L.'s move to Oregon precluded such compliance and S.L. failed to complete four prior treatment plans designed to help her better meet K.M.J.'s needs.  We agree.

¶25     For a youth to be determined a "youth in need of care," that youth must have been "adjudicated or determined, after a hearing . . . to have been abused, neglected, or abandoned."  Section 41-3-102(29), MCA.  Both S.L. and the State stipulated that K.M.J. met the statutory definition as a youth in need of care, a finding which is a threshold requirement to a court-ordered treatment plan.  Section 41-3-443, MCA.

¶26     A treatment plan includes "action that must be taken to resolve the condition or conduct of the parent . . . that resulted in the need for protective services for the child."  Section 41-3-102(25), MCA.  A district court may order termination of parental rights upon a finding that the child is adjudicated a youth in need of care; and (1) the treatment plan is not complied with by the parents; and (2) the parents' conduct is unlikely to change within a reasonable time.  Section 41-3-609(f)(i)-(ii), MCA.

¶27     S.L. argues that because no treatment plan was in effect at the time her parental rights were terminated, the above-statutory language was not satisfied.  We disagree.

¶28     As a "long-standing principle," we have held that partial or substantial compliance

6

with a treatment plan is insufficient to preclude termination of parental rights. *In re N.A.*, 2002 MT 303, ¶ 36, 313 Mont. 27, ¶ 36, 59 P.3d 1135, ¶ 36. Indeed, "a treatment plan can be found unsuccessful even if it is completed." *In re M.T.*, 2002 MT 174, ¶ 31, 310 Mont. 506, ¶ 31, 51 P.3d 1141, ¶ 31.

¶29 We held in *In re J.N.*, 1999 MT 64, 293 Mont. 524, 977 P.2d 317, that "when considering the criteria for termination, courts must give primary consideration to the best interests of the child as demonstrated by the child's physical, mental, and emotional conditions and needs." *J.N.*, ¶ 13. Clear and convincing evidence that a child is neglected and that termination is in the child's best interests is all that is required to sustain a district court's finding of termination. *Matter of K.V.* (1982), 199 Mont. 516, 517, 649 P.2d 1308, 1309.

¶30 Here, S.L. stipulated to adjudication of K.M.J. as a youth in need of care. Under the statutory definition, the District Court needed only to find that K.M.J. had been abused and neglected. S.L. admitted to this fact.

¶31 S.L. was presented with four separate treatment plans, none of which she completed. The social worker noted, upon viewing S.L.'s interactions with K.M.J., that S.L. did not know how to change her diaper, nor did she purchase the proper clothing or food for K.M.J. In addition, S.L. did not complete her counseling sessions or her anger management classes, nor did she provide urinalysis samples as requested. Based on this evidence, the District Court ordered termination of S.L.'s parental rights. We hold that the District Court did not err in so doing. The evidence not only shows that S.L. did not complete the treatment plans, but more notably, it shows that her conduct is unlikely to change. She was provided four opportunities to develop minimum parenting skills, but failed to do so. Further, we hold that

termination was in K.M.J.'s best interests, as S.L. repeatedly proved that she could not meet the physical or emotional needs of K.M.J.

¶32     The District Court's order terminating S.L.'s parental rights is affirmed.


/S/ JAMES C. NELSON


We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE