FILED

02/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0687

DA 23-0687

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 38N

BRADLEY C. WORKMAN AND
KAREN M. WORKMAN,

      Plaintiffs and Appellants,

  v.

BRIAN KENNETH STAINTHORPE,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DV-21-146
                Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Rufus I. Peace, Peace Law Group, LLC, Blackshear, Georgia

      For Appellee:

           Alison Garab, Western Roots Law, PLLC, Bozeman, Montana

Submitted on Briefs:  January 15, 2025

Decided:  February 25, 2025

Filed:

                  _____
                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Bradley and Karen Workman (the Workmans) appeal from the Nineteenth Judicial District Court, Lincoln County's November 17, 2023 Findings of Fact, Conclusions of Law, and Order entered in favor of Brian Stainthorpe, awarding him declaratory relief, a permanent injunction, compensatory and punitive damages, and attorney fees and costs. The Workmans contend the District Court erred by granting Stainthorpe relief after the Workmans conceded their quiet title claim and in its determination of the compensatory and punitive damages.

¶3 In 2009, Stainthorpe purchased Lot 4 within the Eureka Hills subdivision to use as a personal vacation property. As part of that transaction, Stainthorpe acquired a water well easement (Easement) from the owner of the adjoining parcel, Lot 5. The Easement provided that the only then-existing well "located on the border between Lot 4 and Lot 5 . . . shall provide the domestic source of water for Lot 4 ONLY," and granted ingress and egress rights for installation and maintenance of a water delivery system to Lot 4. (Emphasis in original.). The Easement was properly recorded and bound the properties' respective successors-in-interest to its terms.

¶4     The Workmans—both of whom have experience as licensed real estate professionals—purchased Lot 5 on December 28, 2020.  Prior to closing on Lot 5, the seller provided the Workmans a copy of the Easement and a title commitment that listed the Easement as an exception.  The buy-sell agreement the Workmans executed also disclosed the existence of the Easement.

¶5     On February 26, 2021, the Workmans began residing in a camper on Lot 5.  On that same day, the Workmans connected their camper to Stainthorpe's well and cut the water line to Lot 4 without Stainthorpe's knowledge or consent.  The Workmans dug a trench up to and around the well for the purpose of installing their own water delivery system to appropriate the water from Stainthorpe's well.  The Workmans placed large rocks around the trenching that obstructed Stainthorpe's access to his well from Lot 4.  Bradley Workman called Stainthorpe in March 2021 and told him that the Workmans had seized possession and control of the well.  On March 30, 2021, Stainthorpe's attorney at the time sent a letter to the Workmans, explaining they had no legal right to use the well pursuant to the Easement and demanding they restore service and access to the well.  The Workmans refused.  As a result of the Workmans' illegal misappropriation of Stainthorpe's well, Lot 4's shower, toilet, and septic system became inoperable, and Stainthorpe had to stay in hotels when visiting the area.

¶6     On August 5, 2021, the Workmans filed a pro se quiet title action against Stainthorpe, seeking to terminate his Easement.  Stainthorpe counterclaimed for tortious interference with and trespass to the Easement, and he requested declaratory and injunctive

relief as well as compensatory and punitive damages. Following a hearing, the District Court granted Stainthorpe's application for a preliminary injunction on September 15, 2021. The District Court held that Stainthorpe was entitled to immediate restoration of Lot 4's connection to the well, and it ordered that the well be returned to substantially the same condition as before the disconnection. The District Court prohibited the Workmans from interfering with Stainthorpe's use of the well, but temporarily allowed the Workmans to use a hydrant on Lot 5 that was serviced by the well until the litigation was concluded. Despite the District Court's Order, the Workmans continued to use their connection to the well without restoring Stainthorpe's connection to Lot 4.

¶7 The Workmans retained an attorney who noticed his appearance on their behalf on October 22, 2021. In February 2022, the Workmans drilled their own well on Lot 5 and hired a contractor to restore Lot 4's well and water delivery system. The Workmans did not notify Stainthorpe about the restoration work until after it was completed. On February 22, 2022—exactly one year after they had first illegally misappropriated Stainthorpe's well and over five months after the District Court had ordered them to immediately restore Stainthorpe's well and connection to their prior conditions—the Workmans performed the restoration work. The Workmans sent Stainthorpe four photographs and a $345 invoice as notice of the restoration. On March 8, 2022, the Workmans moved to dismiss their quiet title claim and Stainthorpe's tortious interference counterclaim, and they moved for summary judgment on the remaining counterclaims. Stainthorpe opposed the motions. The District Court did not issue a ruling prior to trial.

4

¶8     Stainthorpe hired contractors to perform an inspection of the well and water delivery system on March 14, 2022. The inspection determined additional work was needed to replace an electrical line the Workmans damaged and to restore sunken areas of Lot 4 that had been destabilized by the Workmans' excavation.

¶9     The case went to a bench trial on September 2, 2022. Notwithstanding their protracted history of misappropriating Stainthorpe's well and even denying him access to his own well, the Workmans conceded that the Easement was valid and enforceable. The District Court therefore determined the only remaining issues were Stainthorpe's counterclaims and damages. Stainthorpe called five witnesses at trial: Terry Comstock, a local relator who represented Stainthorpe in the 2009 Lot 4 purchase; Corey Finely, the owner of Lot 3 and neighbor to the parties; Bradley Workman; Stainthorpe's wife, Jennifer Stainthorpe; and Stainthorpe himself. The District Court admitted Comstock's testimony concerning the rental value of Lot 4 over the Workmans' objection that Comstock was an undisclosed expert.

¶10     On November 17, 2023, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The court concluded the Workmans trespassed upon the Easement and unreasonably interfered with Stainthorpe's Easement rights. The court determined Stainthorpe was entitled to a declaration concerning the parties' rights and obligations under the Easement, declared the Easement's terms valid, and awarded Stainthorpe his attorney fees and costs pursuant to the Uniform Declaratory Judgment Act (UDJA). The court permanently enjoined the Workmans from: interfering with Stainthorpe's ownership,

use, and maintenance of the well and water delivery system; using the well for any purpose; and placing impediments that obstruct access or increase the cost of maintaining the well and water delivery system. The District Court awarded Stainthorpe $55,810[1] in compensatory damages and $56,500 in punitive damages. Stainthorpe's attorney fees and costs totaled $48,124.40.[2]

¶11 We review de novo a district court's conclusions of law for correctness. *Whitefish Congregation of Jehovah's Witnesses, Inc. v. Caltabiano*, 2019 MT 228, ¶ 21, 397 Mont. 284, 449 P.3d 812. A district court's ruling on whether a justiciable controversy exists is a conclusion of law. *Northfield Ins. Co. v. Mont. Ass'n of Cntys.*, 2000 MT 256, ¶ 8, 301 Mont. 472, 10 P.3d 813. We review a district court's findings, including factual findings underlying an award of damages, for clear error. *DeTienne v. Sandrock*, 2018 MT 269, ¶¶ 14, 24, 393 Mont. 249, 431 P.3d 12. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves us with a definite and firm conviction that the trial court made a mistake. *Whitefish Congregation*, ¶ 22.

¶12 We review a district court's grant or denial of injunctive relief for a manifest abuse of discretion, which is one that is obvious, evident, or unmistakable. *Whitefish Congregation*, ¶ 23 (internal citations omitted). A district court's evidentiary rulings and

---

[1] The District Court's November 17, 2023 Order miscalculated the total sum of the compensatory damages as $55,650. Because this matter is being remanded for entry of an amended judgment, the correct calculation can be entered on remand.

[2] The parties stipulated to the reasonableness of Stainthorpe's attorney fees and costs.

its decision to award damages are reviewed for abuse of discretion. *Faulconbridge v. State*, 2006 MT 198, ¶ 22, 333 Mont. 186, 142 P.3d 777; *DeTienne*, ¶ 10. An abuse of discretion occurs only when the district court acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason. *Faulconbridge*, ¶ 22.

¶13 Despite refusing to acknowledge the Easement's validity, thus denying Stainthorpe access to his well and misappropriating the well to their own use for a year, the Workmans contend their recognition of the Easement rendered Stainthorpe's claims for declaratory judgment and injunctive relief moot. The District Court concluded the Workmans' concession did not extinguish Stainthorpe's claims because the Workmans' conduct throughout the dispute showed they "fail[ed] to understand or acknowledge" Stainthorpe's rights under the Easement.

¶14 We apply a three-part analysis to determine whether a justiciable controversy exists:

> First, a justiciable controversy requires that parties have existing and genuine, as distinguished from theoretical, rights or interest. Second, the controversy must be one upon which the judgment of the court may effectively operate, as distinguished from a debate or argument invoking a purely political, administrative, philosophical or academic conclusion. Third, [it] must be a controversy the judicial determination of which will have the effect of a final judgment in law or decree in equity upon the rights, status or legal relationships of one or more of the real parties in interest, or lacking these qualities be of such overriding public moment as to constitute the legal equivalent of all of them.

*Northfield*, ¶ 12 (citations omitted).

¶15 The District Court did not err by concluding a justiciable controversy existed in this case. The Workmans refused to acknowledge Stainthorpe's rights under the Easement for a year, seized exclusive control of the well, obstructed his access to it, and sought to

7

terminate Stainthorpe's Easement with no basis in law or fact. The controversy is one upon which the judgment entered by the District Court effectively operates by validating the challenged Easement provisions and by proscribing further injury to Stainthorpe. The controversy is one upon which the District Court's determination has the effect of a final judgment because it resolves all issues between the parties concerning their respective rights and obligations under the Easement. The Workmans had notice of the Easement, continued to use the well over Stainthorpe's objection and the preliminary injunction's prohibition, and failed to seek Stainthorpe's permission before performing the restoration work. Finally, the rocks the Workmans had placed around the well still obstructed Stainthorpe's access to it from Lot 4 at the time of trial. In light of the Workmans' abject disregard for the property rights of others and even for the District Court's orders during the pendency of the action, their eleventh-hour concession of Stainthorpe's legal rights—rights that were patently obvious from the beginning—did not deprive the District Court of its ability to grant effective relief to Stainthorpe.

¶16 The Workmans' argument against the award of attorney fees is premised solely on their contention that their belated concession terminated the controversy between the parties and deprived the District Court of jurisdiction to enter declaratory judgment, leaving no legal basis on which to ground the award. Because we conclude the District Court properly entered declaratory judgment in favor of Stainthorpe, we affirm the District Court's award of attorney fees and costs.

8

¶17 The District Court likewise did not err by entering a permanent injunction against the Workmans. "[C]ompensatory damages are generally inadequate to fully remedy a continuous or recurring encroachment on real property." *Davis v. Westphal*, 2017 MT 276, ¶ 27, 389 Mont. 251, 405 P.3d 73. After the Workmans admitted to using the well following entry of the preliminary injunction, obstructing Lot 4's access with rocks, and performing the restoration work without Stainthorpe's knowledge or consent, the District Court properly determined a future prohibition of such use and interference was necessary to preserve Stainthorpe's ability to use his property right. *Whitefish Congregation*, ¶ 40. In light of the Workmans' conduct, the injunctive relief granted was a "logical conclusion that flowed from the facts and circumstances of the present case." *Whitefish Congregation*, ¶ 40. The District Court did not manifestly abuse its discretion when it entered a permanent injunction prohibiting the Workmans from using the well and interfering with Stainthorpe's rights under the Easement.

¶18 The Workmans maintain the District Court erred by basing its award of compensatory damages for restoration and discomfort and annoyance on speculative evidence; by determining the method used to measure Stainthorpe's lost use damages; by finding the Workmans liable for 349 days of lost use; and by admitting Comstock's opinion that Lot 4's rental value was $150 per day.

¶19 The categories of compensatory damages awarded by the District Court to Stainthorpe totaled $55,810, calculated as follows: $3,300 in restoration damages attributed to the $1,300 inspection cost and $2,000 to stabilize sinking areas on Lot 4

9

caused by the Workmans' excavation; $160 in discomfort and annoyance damages based on Stainthorpe's testimony that he had to stay in a hotel because there was no water available on his property; and $52,350 in lost use damages calculated by multiplying the daily rental value of the property at $150 by 349 days.

¶20    The Workmans failed to preserve for appeal their argument that the District Court erred by admitting speculative evidence as to the $1,300 inspection cost and the $160 discomfort and annoyance damages. To preserve an objection to the admission of evidence for purposes of appeal, the complaining party must make a timely objection or motion to strike and state the specific grounds for such objection or motion. *Nelson v. Farmers Union Mut. Ins. Co.*, 2003 MT 101, ¶ 32, 315 Mont. 268, 68 P.3d 689. The Workmans failed to timely object that Stainthorpe's testimony concerning these damages was speculative; they waived the right to claim error on appeal as to these findings. *Nelson*, ¶ 32. We affirm the District Court's award of $1,300 in restoration damages for the inspection cost and $160 in discomfort and annoyance damages for the hotel stays.

¶21    Regarding the $2,000 in restoration damages awarded to address the sunken areas of Lot 4, the Workmans argue no record evidence exists to support this figure. "[A] district court's damage determination is a factual finding which must be upheld if it is supported by substantial evidence." *Harding v. Savoy*, 2004 MT 280, ¶ 45, 323 Mont. 261, 100 P.3d 976 (internal quotations and citation omitted). The Workmans are correct that there was no testimony or evidence admitted at trial supporting this specific amount for restoration costs. Rather, Stainthorpe testified it would cost an estimated $1,400 to restore

10

the well from the damages the Workmans caused. Stainthorpe based this testimony on his personal experience purchasing gravel and renting equipment to stabilize other areas of Lot 4. The Workmans had an opportunity to cross-examine Stainthorpe as to this valuation. The District Court admitted this testimony over the Workmans' objection that Stainthorpe's testimony was speculative. The testimony of a credible witness is sufficient for proof of any fact and the fact-finder is the exclusive judge of a witness's credibility. Sections 26-1-301, -302, MCA; *Smithers v. Hagerman*, 244 Mont. 182, 191, 797 P.2d 177, 183 (1990). The amount of damages suffered by Stainthorpe for restoring the sunken areas of Lot 4 must be reduced to that which the evidence will sustain: $1,400. *McKay v. Wilderness Dev., LLC*, 2009 MT 410, ¶ 74, 353 Mont. 471, 221 P.3d 1184. We reverse the District Court's judgment awarding $3,300 in restoration damages to Stainthorpe and remand with instructions to enter judgment for restoration damages in the amount of $2,700.

¶22 The District Court did not err in determining that loss of use damages measured by the rental value for the entire property were available in this case. Stainthorpe pled a counterclaim for trespass, a claim which encompasses "both the initial unauthorized entry upon the property of another and the subsequent failure to cease or abate the intrusion." *Davis*, ¶ 15. As this Court has observed, "[w]here there has been a trespass to land, damages . . . for the loss of use of the land itself, have long been recognized." *Christian v. Atl. Richfield Co.*, 2015 MT 255, ¶ 46, 380 Mont. 495, 358 P.3d 131 (quoting *French v. Ralph E. Moore, Inc.*, 203 Mont. 327, 333, 661 P.2d 844, 847 (1983)). "Reasonable rental

11

value is a proper estimation of the value of use of property." *Goodover v. Lindey's, Inc.*, 255 Mont. 430, 439, 843 P.2d 765, 771 (1992) (citing *Smithers*, 244 Mont. at 191, 797 P.2d at 183; *Pritchard Petroleum Co. v. Farmers Co-Op. Oil & Supply Co.*, 121 Mont. 1, 7, 190 P.2d 55, 58 (1948)). Comstock testified Lot 4's daily rental value would be $150. He arrived at this value based on VRBO rentals in the area. The District Court adopted that figure as a reasonable basis upon which to calculate Stainthorpe's lost use damages. The Workmans contest this valuation, asserting that Lot 4 could not be rented as a VRBO under the covenants and no evidence showed Stainthorpe intended to rent it as such. The Workmans miss the point. The relevant inquiry concerns the rental rate that would reasonably compensate Stainthorpe for his lost use. The District Court determined a daily rental value in general was an appropriate basis upon which to calculate Stainthorpe's lost use. "The value of the use is the value to the owner of the property, not its value to the wrongdoer." *Pritchard Petroleum*, 121 Mont. at 7, 190 P.2d at 58. Stainthorpe and his wife's testimony provided further evidence supporting the District Court's finding that the entirety of Lot 4 was unusable due to the absence of water necessary to operate the shower, toilet, and septic system. The District Court did not abuse its discretion by awarding loss of use damages measured by the daily rental value of Lot 4 in its entirety.

¶23 The Workmans next contend that the District Court should have limited the lost use period to 201 days. The Workmans incredibly argue that the lost use period should end upon the District Court's issuance of the September 10, 2021 preliminary injunction, even

12

though the Workmans disobeyed the District Court's Order and failed to restore Stainthorpe's access to his well for another five months. A claimant may recover damages as compensation for the loss of use of the property during the duration of the trespass. *Davis*, ¶ 18 (citing § 27-1-318, MCA; *Pritchard Petroleum*, 121 Mont. at 7, 190 P.2d at 58–59). The Workmans admitted they failed to restore Lot 4's connection and continued to use the well until they drilled their own well on February 9, 2022. The rocks obstructing Lot 4's access to the well remained in place through trial. Whether Stainthorpe could have restored Lot 4's connection earlier is immaterial because the Workmans continued to unlawfully use the well and occupy the Easement after September 10, 2021, and the duty to restore the well and Lot 4's connection to it lay with the Workmans, not Stainthorpe. Section 27-1-713, MCA. The District Court properly found the period of lost use was 349 days, calculated as the days between February 26, 2021, and February 9, 2022.

¶24 The District Court did not abuse its discretion by admitting Comstock's expert opinion testimony concerning Lot 4's per day rental value in the amount of $150. The rule governing expert disclosures, M. R. Civ. P. 26, does not provide disclosure requirements for non-retained experts; nevertheless, the opposing party must have sufficient notice of the non-retained expert's identity and opinions to prevent unfair surprise. *Norris v. Fritz*, 2012 MT 27, ¶¶ 31–33, 364 Mont. 63, 270 P.3d 79. The rules governing disclosure are "meant to eliminate surprise and promote the effective cross-examination of witnesses." *Evans v. Scanson*, 2017 MT 157, ¶ 20, 388 Mont. 69, 396 P.3d 1284. During the hearing, Stainthorpe's counsel stated Stainthorpe disclosed Comstock's identity as a non-retained

hybrid witness who was expected to offer expert testimony concerning real estate valuation. The District Court determined that disclosure was sufficient to allow Comstock to testify about the damages issue if Stainthorpe "established through [Comstock's] training and experience" that Comstock had relevant information. The Workmans were able to effectively cross-examine Comstock as evidenced by the admissions they elicited from him concerning the impact of the covenants on the rental value and the restoration damages. The District Court did not exceed the bounds of reason or act arbitrarily by admitting Comstock's testimony, nor were the Workmans prejudiced by unfair surprise.

¶25    Stainthorpe sought punitive damages based on his claim that the Workmans' actions constituted intentional, unlawful, and malicious conduct. The Workmans argue that Stainthorpe failed to prove actual malice with clear and convincing evidence and that the court's findings supporting its award of punitive damages are clearly erroneous.

¶26    A court may award reasonable punitive damages against a party if it finds the party guilty of actual malice. Section 27-1-221(1), MCA (2021).[3] A party is guilty of actual malice if the party "has knowledge of facts or intentionally disregards facts that create a high probability of injury" to the claimant and deliberately proceeds to act in conscious or intentional disregard, or with indifference to, the high probability of injury to the claimant. Section 27-1-221(2), MCA (2021). The claimant must prove all elements by clear and convincing evidence, which is more than a preponderance but less than beyond a

_____

[3] Section 27-1-221, MCA, was amended in 2023. We cite the prior version because the statute as amended applies to actions filed on or after May 19, 2023, and this action was filed on August 5, 2021. 2023 Mont. Laws ch. 658, § 1.

reasonable doubt. Section 27-1-221(5), MCA (2021).[4] The court must demonstrate that it considered all statutory factors and clearly state the reasons the factors justify an award of punitive damages in its findings and conclusions. Section 27-1-221(7)(b), MCA (2021);[5] *Osman v. Cavalier*, 2011 MT 60, ¶ 16, 360 Mont. 17, 251 P.3d 686.

¶27 The District Court found that the Workmans had actual and constructive notice of the Easement, acted without consulting an attorney or doing any legal research despite their experience selling real estate, and were aware the well provided the only source of water to Lot 4. This matter did not present complicated legal issues. The fact that Stainthorpe possessed a valid easement appeared straightforward in the record. *Osman*, ¶ 14. Any purported misunderstandings on the Workmans' part about their obligations under the Easement were certainly dispelled after entry of the preliminary injunction. Bradley Workman testified that he continued to deliberately use the well without restoring Lot 4's water delivery system, refused to remove the rocks obstructing Stainthorpe's access, and intentionally trespassed when he authorized performance of the restoration work in February 2022 without Stainthorpe's consent. The record supports the District Court's determination that the Workmans knew or should have known: (1) they had no legal right to use the well, obstruct access to it, destroy Lot 4's water delivery system, and trespass on the Easement; and (2) that doing so would create a high probability of injury to Stainthorpe by depriving his property of water and interfering with his rights under the Easement.

---

[4] Since recodified at § 27-1-221(6), MCA.

[5] Since recodified at § 27-1-221(8)(b), MCA.

Sections 27-1-221(1)–(2), MCA (2021). The record likewise supports the District Court's holding that Stainthorpe presented clear and convincing evidence that the Workmans acted with disregard or indifference to the high probably of injury to Stainthorpe. Sections 27-1-221(2), (5), MCA (2021). We affirm the District Court's decision to award punitive damages on the basis of actual malice.

¶28 The District Court entered findings and conclusions pursuant to the factors listed in §§ 27-1-221(7)(b)(i)–(viii), MCA (2021), and determined a reasonable punitive award was $56,500. The District Court reached this amount by calculating the difference between the value of Lot 5 without a well—the purchase price of $38,500—and its value with a well—the March 1, 2022, appraised value of $95,000. The Workmans challenge as clearly erroneous the following findings made pursuant to the factors: the Workmans profited substantially from their wrongdoing; Karen Workman's yearly income was $43,000; Bradley Workman chooses not to work; Lot 5's appraised value as of March 1, 2022, was $95,000; and the Workmans could not have obtained the March and April 2022 loan funds without using Stainthorpe's well. These findings are taken from the transcript of Bradley Workman's deposition, which Stainthorpe attached to his June 24, 2022 Motion for Partial Summary Judgment. The Workmans do not challenge the veracity of the findings. The Workmans argue that although they are taken from the court record and Bradley Workman's own deposition testimony, Stainthorpe did not move to admit the deposition into evidence *at trial*.

16

¶29 In order to satisfy the statutory requirement that the court "clearly state the reasons for making its award" in its findings and conclusions, demonstrating consideration of each statutory factor justifying punitive damages, evidence must be presented for the court to consider. Section 27-1-221(7)(b), MCA (2021); *Ward v. Vibrasonic Lab, Inc.*, 236 Mont. 314, 321, 769 P.2d 1229, 1234 (1989). The court's reliance on the summary judgment record in determining the punitive damages award does not provide a basis for reversal under the circumstances of this case. "[N]o error by the district court is grounds for setting aside the judgment of the district court unless the error affects the substantial rights of the parties." *Pederson v. Dawson Cnty.*, 2000 MT 339, ¶ 11, 303 Mont. 158, 17 P.3d 393 (citing M. R. Civ. P. 61). The Workmans' substantial rights were not affected because Bradley Workman's deposition statements were admissible at trial pursuant to M. R. Civ. P. 32 and M. R. Evid. 801(d)(2). The Workmans do not contest the validity of the underlying facts sourced from the deposition, particularly the appraised value of $95,000, which formed the basis for the District Court's award calculation. We may review the entire district court record to determine if a district court's findings are clearly erroneous. *State v. Rodriguez*, 2011 MT 36, ¶ 15, 359 Mont. 281, 248 P.3d 850. This Court does not lightly overturn the verdict of the fact-finder, and the "test of substantial credible evidence allows for reversal only if there is an absence of probative facts to support the verdict." *Beaver v. Mont. Dept. of Nat. Res. & Conservation*, 2003 MT 287, ¶ 79, 318 Mont. 35, 78 P.3d 857 (citing *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 56, 301 Mont. 259, 9 P.3d 38, *overruled on other grounds by Johnson v. Costco Wholesale*,

17

2007 MT 43, 336 Mont. 105, 152 P.3d 727). Based on the foregoing reasons, we conclude Bradley Workman's deposition provides sufficient probative facts to support the District Court's verdict and affirm the punitive damages award.

¶30 We affirm the District Court's declaratory judgment and permanent injunctive relief. We affirm the District Court's award of attorney fees and costs in the amount of $48,124.40. We affirm the District Court's award of compensatory damages in the amount of $55,210, as follows: $160 for discomfort and annoyance; $52,350 for lost use; and $2,700 for restoration, reduced from $3,300 for the reasons discussed in ¶¶19–21. We affirm the District Court's award of punitive damages in the amount of $56,500.

¶31 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Except as noted herein, the judgment of the District Court is affirmed, and this matter is remanded to the District Court for entry of an amended judgment consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE